CORNELIUS
*vs.*
COMMONWEALTH

defendant had not for the time being the rightful care and *custody* of such slave. (11 *B. Monroe*, 1.)

</div>

---

## Cornelius *vs.* Commonwealth.

### APPEAL FROM CHRISTIAN CIRCUIT.

<div style="float:right;">

INDICTMENT.

Case 4.

15bm539
110 409

</div>

1. The Court of Appeals has no power to reverse the decision of a Circuit Court overruling a motion for a new trial, made upon the ground that one of the jury had expressed an opinion adverse to the prisoner previous to the trial, of which the defendant and his counsel were uninformed until the trial was concluded.

2. Though, as a general rule, a witness cannot be examined to any fact which is collateral to the issue, merely for the purpose of contradicting him by other evidence if he should deny it, and thereby to discredit him, and if such question be put his answers cannot be contradicted by the party who asked, but are conclusive against him; yet questions which are intended to ascertain the feelings of the witness to the prisoner may be asked; they may have an important bearing in determining the guilt or innocence of the accused. (1 *Greenleaf*, 500; 1 *Starkie*, 190, *and note C; Thomas vs. David*, 2 *Carr. & Payne*, 350.)

3. In a trial of a prisoner charged with murder, he proved threats on the part of the person killed to kill him, which threats had been communicated to the prisoner. He then offered to prove other threats not communicated, which the court refused to admit.— Held—that it was error to exclude such proof; its tendency was to confirm the proof of the threats already proved, and to show the intention of the deceased to attack the prisoner.

4. Where there is proof of a combination between the person slain and others to act in concert in any hostile meeting between the accused and the person slain, what any of the party said in regard to such contemplated meeting is competent evidence. And if such statement be brought out on the interrogation of the prosecution the whole of the conversation at the time is competent evidence for the accused, but not statements at other times.

5. The rejection, by the Circuit Court, of testimony offered by the accused in a criminal case, which was legitimate and calculated to have an important bearing in favor of the accused, is a ground for

CORNELIUS
*vs.*
COMMONWEALTH

reversing the judgment of conviction. The rule in civil cases that if the verdict is right upon all the facts it should not be disturbed, does not apply to criminal cases where the jury is to decide the facts exclusively in cases of acquittal.

Case stated.

Jesse Cornelius was indicted, tried, and found guilty of the murder of Albert G. Hopson, in the county of Christian, on the —— day of July, 1854. The testimony showed that there had been two previous difficulties between the parties in the same week in which the killing took place, one on Wednesday the second on Thursday. The killing took place on Saturday. The shooting took place in the village of Bainbridge, in which the accused resided, and from the upper part of a story-and-a-half-house in which the accused resided. In appeared in proof that there had been ill-feelings between the parties, and threats made by Hopson that he would kill Cornelius, and that he tried to hire some one to kill him. And threats also that he would get the Kelly's and tear down his house and drive him off, which threats, &c., had been communicated to Cornelius. It also appeared in proof that on Thursday before the killing, the deceased, (Hopson,) displayed pistols with which he said he intended to kill Cornelius, and that he had been trying to kill him for a week. These last threats not appearing to have been communicated to the accused before the killing, were excluded from the jury.

It also appeared from the testimony that on Saturday, the day on which the shooting took place, two of the Kellys, James and Theodore, came to Bainbridge; that they had arms; that they were in the company of Hopson and James Moore, Jr., who was also armed with dirk and bowie knife displayed in his belt, and also a rifle. After collecting together at Kirby's store, and drinking, Hopson with a pistol in his bosom, the party moved off toward the house of Mrs. Taylor, occupied by the accused. The first part of the company, James Kelly and James Moore, crossed the street and are protected by J.

Taylor's house from Mrs. Taylor's house. Hopson and the others of the party with him crossed the street diagonally and in view of Mrs. Taylor's house. Hopson was shot, while advancing, from the upper window of Mrs. Taylor's house.

On the trial of the cause the defendant proved threats on the part of Hopson, which had been communicated to him, and also offered to prove other threats which were not shown to have been communicated to him, which were excluded by the court from the jury.

A witness for the prosecution was interrogated and asked "if he had not ill-feelings toward the accused," which he denied. He was also asked if he had not said "that he would come to court and testify against and hang the prisoner if he had to walk," which he also denied. The accused introduced a witness to prove that he had made such statements, but the court refused to permit the accused to prove that such statements had been made.

One witness testified that after Mrs. Taylor was acquitted by the examining court, that the prisoner remarked that that was right, for she knew nothing of his intention to kill Hopson; that he had never determined to kill him until the night before, when he determined to kill Hopson if he came down there next day.

The defendant then offered to read the testimony given by himself on the trial of Mrs. Taylor before the examining court, which was refused.

The court permitted the declarations of Gus. Cornelius and Wiley Gresham, on the day before the killing, at Gresham's house, to be given in evidence to the jury, also the declarations of Joiner, who was at the house of Mrs. Taylor when Hopson was shot.

*Robert McKee*, for appellant—

Argued, 1. That the threats, acts, and doings of Hopson, deceased, are legitimate objects of inquiry in this case. (1 *Starkie's Ev.* 161.) Certainly his dec-

CORNELIUS
vs.
COMMONWEALTH

larations accompanying acts. (*Ib.* 162.) Though a particular declaration may not have been the ground of action with the defendant, yet where various threats of like import have been communicated, and where the particular threat connects itself with the conduct of the party in a series of hostile demonstrations of several days' continuance, it becomes very important, in explaining and giving character to the acts of a party. Hopson said on Thursday that he would kill Cornelius on that day. He raised a difficulty to draw him out from his house, where he supposed he was, but he was from home, and no opportunity presented itself to carry out the threat. He then threatens to get the Kellys and tear down the prisoner's house, &c. On Saturday he is found with the Kellys and Moore, all armed, advancing upon the house of Mrs. Taylor, where the prisoner was. Does not this show an intimate connection with the threats? Moore avows that his purpose was to kill Joiner. Can it be supposed that Hopson's object was pacific? All the threats made were competent to be proved, as sustaining those proved and communicated to the accused. (1 *Starkie*, 76; *Ib.* 222.) And was corroborative of the proof of the threats before admitted to the jury.

2. It is insisted that the court erred in refusing the proof, offered by defendant, of the declarations of Moore, calculated to show the state of his feelings towards the prisoner. The accused was not concluded by the answers of Moore made to his questions on that point. It was not such a collateral question as comes within the rule requiring the party who asks the question to abide by the answer of the witness. The defendant has a right to know and show to the jury what where the feelings of the witness. (1 *Starkie*, 190, *note C*; *Thomas vs. David*, 2 *Carrington & Payne*, 350.)

3. It was erroneous to permit the declarations of Gus. Cornelius and Wiley Gresham, made on Friday, at Gresham's house, to be proved. There was no evi-

dence of a conspiracy shown, and the declarations of Gus. Cornelius should not have been received. The same may be said of the declarations of Joiner, who was at Mrs. Taylor's on the day Hopson was shot. If anything he said was admissible, all that he said in relation to his object in being there was equally so. These declarations of Joiner's purpose in being there were excluded by the court.

4. The testimony given by the accused on the trial of Mrs. Taylor before the examining court, was necessary to explain a declaration of the accused made there, as to his determination to kill Hopson if he came to Mrs. Taylor's that day ; but this the court refused to permit.

It is a legitimate ground of reversal that the court refused to permit the accused to have the benefit of legal testimony offered to the jury, and that the court permitted improper evidence to go to the jury. We rely that in this case both those grounds appear, and a reversal should follow.

*James Harlan, Attorney General,* for commonwealth—

The conclusion to which I arrived, after a rapid reading of the record, is that the conviction is right, and the judgment of the court below should be carried into execution.

1. Conceding that the prisoner had been informed that Hopson had threatened to kill him it, was his duty to take the steps prescribed by law to prevent Hopson from executing his purpose. No case, either in England or in the United States, has extended the doctrine of self-defense so far as to include a case like this. The act of Cornelius was secret. Hopson had no knowledge of it until he received the mortal wound, and it is no defense *in law* to prove that the prisoner shot under the apprehension that Hopson intended to shoot him. There was no impending danger when Cornelius discharged his gun.

2. Several witnesses proved threats by Hopson against the prisoner, but which were not communi-

cated to him until after he gave the mortal shot. These were excluded by the court, and I suppose, properly. They afforded no excuse for the act, because he was ignorant of their existence, and had no influence on his movements.

3. As respects the juror, Mallett, I have only to remark, that when all of the affidavits are read, the court will be apt to arrive at the conclusion, that the statement of the juror himself contains the real truth of the matter. That whatever impressions may have been made on his mind from rumor, they had no influence in the consideration of the case upon the evidence as detailed in court.

June 6.

Judge SIMPSON delivered the opinion of the court—

The appellant was indicted for murder and found guilty. A judgment of conviction can only be reversed for the following errors of law to the defendant's prejudice, appearing on the record. (*Code of Practice in Criminal cases, sec.* 334.)

1. An error of the Circuit Court in admitting or rejecting important testimony.

2. An error in instructing or in refusing to instruct the jury.

3. An error in failing to arrest the judgment.

4. An error in allowing or disallowing a peremptory challenge.

No objection to any of the proceedings in the Circuit Court, which does not come under one of the foregoing heads, can be relied upon in this court, or made available for the reversal of a judgment of conviction. Consequently, the action of the Circuit Court in overruling the motion for a new trial, so far as that motion was based upon the alleged fact that one of the jurors had expressed an opinion adverse to the prisoner, previous to the trial, of which he and his counsel were uninformed, until the trial was concluded, is not a proper subject of inquiry on this appeal.

1. The Court of Appeals has no power to reverse the decision of a Circuit Court overruling a motion for a new trial, made upon the grounds that one of the jury had expressed an opinion adverse to the prisoner previous to the trial, of which the defendant

But various questions were made upon the trial, in relation to the admissibility of testimony which was offered by the accused, and also by the common-wealth, and the decision of these questions, or some of them, it is contended, was erroneous and prejudicial to the accused.

James Moore, Sr., was introduced as a witness on on the part of the commonwealth, and gave important evidence against the accused. This witness, on his cross-examination, was asked, "if he had not ill feeling toward the prisoner," to which he responded that he "had not." He was then asked, "if he had not, during the present term of the court, at the shop of James T. Woosley, stated in the presence of Richard Owen and J. T. Woosley that he would come to court to testify against and hang the prisoner if he had to walk." He denied that he had made any such statement. In the progress of the trial, the defendant introduced Richard Owen, and offered to prove by him that the witness, Moore, had made the statement attributed to him, and which he denied having made; but this testimony was rejected by the court.

As a general rule, a witness cannot be cross-examined as to any fact, which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if such a question be put to a witness, his answer cannot be contradicted by the party who asked the question; but it is conclusive against him.

But a question which is intended to ascertain the feelings of the witness towards the prisoner, is not irrelevant. If a witness have expressed or entertains feelings of hostility towards the accused, the fact may have an important bearing in determining his guilt or innocence of the crime with which he stands charged; and therefore the feelings of the witness towards the accused is a proper subject of inquiry. (1 *Greenleaf, page* 500; 1 *Starkie,* 190, *and*

2. Though, as a general rule, a witness cannot be examined to any fact which is collateral to the issue, mere-ly for the pur-pose of contra-dicting him by other evidence if he should de-ny it, and there-by to discredit him, and if such question be put his answer can-not be contra-dicted by the party who ask-ed, but are con-clusive against him, yet ques-tions which are intended to as-certain the feel-ings of the wit-

CORNELIUS
*vs.*
COMMONWEALTH

ness to the prisoner may be asked; they may have an important bearing in determining the guilt or innocence of the accused. (1 *Greenleaf*, 500; 1 *Starkie*, 190, and note *C*; *Thomas vs. David*, 2 *Carr. & Payne*, 350.)

3. In the trial of a prisoner charged with murder, he proved threats on the part of the person killed to kill him, which threats had been communicated to the prisoner. He then offered to prove other threats not communicated, which the court refused to admit. Held—that it was error to exclude such proof; its tendency was to confirm the proof of the threats already proved, and to show the intention of the deceased to attack the prisoner.

4. Where there is proof of a combination between the person slain and others to act in concert in any hostile meeting between the accused and the person slain, what any of the party said in regard to such

note *C*; *Thomas vs. David*, 7 *Carrington and Payne*, 350.) Consequently, the court erred in rejecting the testimony offered by the accused to contradict and impeach the witness, Moore.

The prisoner introduced testimony to prove that Hopson, the man he had killed, had, a short time previously, made threats against him, and had tried to hire persons to kill him, which facts had been communicated to him before he killed Hopson. He then offered to prove by other witnesses that Hopson had threatened to kill him, which threats were made by him a few days before he was killed, but were not communicated to the prisoner, and on this ground were excluded by the court.

We think that this testimony should, under the circumstances in this case, have been admitted. It tended to confirm the other evidence, that Hopson had made threats against the prisoner, and to counteract a presumption of fabrication, by the witnesses who gave that testimony. Besides, Hopson's intention to make an attack on the accused was an important matter, as well as the belief of the existence of such an intention, on the part of the prisoner.

The statements made by Joiner and Gus. Cornelius before the killing occurred, were competent testimony, inasmuch as there was evidence of a combination between them and the prisoner to act in concert, in any hostile meeting that might take place between them on the one side, and Hopson and his friends on the other. The commonwealth having asked for the statements made by Joiner, the prisoner had a right to all the statements made by him at that time, but not to the statements on the same subject he had made at other times, even during the same day. Nor did the proof made by the jailer, in reference to the statements of the prisoner in his presence, authorize the production of the statements of the accused made at another time, although he made them when he was examined under oath as a witness.

The error committed by the Circuit Court, in rejecting evidence offered by the accused, authorizes a reversal of the judgment of conviction, inasmuch as the evidence rejected was important, and had a direct bearing on the question of the guilt or innocence of the accused. But it is contended that the judgment is right, upon all the testimony, even taking that which was rejected into consideration, and therefore it should not be disturbed by this court. This argument, although applicable to a civil action, where the court decides both matters of law and fact, cannot be allowed any weight in a criminal case, where the matters of fact are to be passed upon by the jury exclusively, in the case of a verdict of acquittal, and where, even in the case of a judgment of conviction, questions of law alone are decided by this court. We do not therefore deem it necessary or proper to express any opinion on the guilt or innocence of the accused, when the whole of the evidence is considered. It is sufficient that testimony important to the defense of the accused was excluded by the court, whereby he was deprived of its advantage on the trial, and it will be for the jury to determine what effect it shall have upon their verdict, when considered by them as in connection with the other evidence in the cause.

Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceedings in conformity with the principles of this opinion.

contemplated meeting is competent evidence. And if such statement be brought out on the interrogation of the prosecution the whole of the conversation at the time is competent evidence for the accused, but not statements at other times.

5. The rejection, by the Circuit Court, of testimony offered by the accused in a criminal case, which was legitimate and calculated to have an important bearing in favor of the accused, is a ground for reversing the judgment of conviction. The rule in civil cases that if the verdict is right upon all the facts, it should not be disturbed, does not apply to criminal cases where the jury is to decide the facts exclusively in cases of acquittal.