## Ferguson v. Commonwealth.

(Decided April 20, 1928.)

### Appeal from Wayne Circuit Court.

1. Homicide.—Malice may be inferred where death is caused by intentional and unlawful use of a deadly weapon, and, on commonwealth's proof of death by such means, it becomes incumbent on defendant to justify or excuse his act by evidence.

2. Homicide.—Evidence that defendant shot deceased with shotgun after previous altercation had apparently been settled held to make issue for jury of question of defendant's malice in prosecution for murder, evidence being sufficient to sustain conviction for murder.

BERTRAM & BERTRAM for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

Opinion of the Court by Drury, Commissioner—
Affirming.

On January 22, 1927, Raymond Ferguson slew Float
Brown. Ferguson was indicted for murder, was found
guilty, and his punishment fixed at imprisonment for
life. About 3 o'clock in the afternoon of the day of the
homicide, Ferguson assisted in ferrying Brown across
the river. When Brown got into the boat, he had a half-
gallon fruit jar about three-fourths full of whisky.
Brown, Ferguson and one Wm. Burris, who was with him,
each took a drink of this whisky. In a spirit of apparent
braggadocio, Brown remarked that he had knocked off
about three people across the river. Ferguson replied,
"I'll bet you did." This seemed to arouse Brown's ire,
and he said, "If I had one of these oars off, I'd hit you."
They soon landed and parted without further trouble.
Brown and Burris went off together, and later they were
joined by Hubert Burk, and Brown, Burris, and Burk,
called at different houses in the neighborhood, at which
Brown manifested his geniality by passing around his
whisky, and it seems that all present on these occasions
partook of it. At about 7:30 in the evening they had
started to Burk's to spend the night, and on the way
they met Ferguson, who had a small single-barreled shot-
gun, and a lantern, and had started 'possum hunting, as
he says. They had some more of the whisky, and the four
of them started off together. Soon they met Doug Win-
chester, and they and Doug had another round of drinks,
then Doug left them, and the four went on. Ferguson
had a horse, and at his suggestion, Burk and Burris got
on the horse and rode for a mile or so, while Brown and
Ferguson walked. Then Brown and Ferguson got on the
horse, and Burk and Burris walked. Ferguson and
Brown reached an old, unoccupied house. They hitched
the horse, went in, and built a fire. Burk and Burris
soon came up, and after Ferguson and Burris had en-
gaged in a scuffle for a while, some of the party pro-
posed that they take another little drink. They sat down
and Brown passed around his whisky. Possibly because
of previous drinks, or some nervousness, Ferguson
spilled some of the whisky when he undertook to take a
drink. This angered Brown and he drew his knife, and
called Ferguson a G—— d—— s—— of a b——, and
used some other epithet which was too filthy to put into
the record. Ferguson said, "Boys, I can't take that."

He went out of the house. Burris suggested to Brown that he had done wrong. They got Ferguson back in the house and Ferguson gave his knife to Burris and said to Brown, "I'll fight fair." Burris asked Brown to give him his knife, and Brown replied: "By G——, I can take care of my knife." The difficulty seemed to be settled, and after a few minutes, the four left the house and went out to the road. Brown stepped to the right of the gate. Burris was standing near him. Ferguson was apparently engaged in untying his horse. Some of the party had carried the lantern out to the gate, but it seems the lantern was on the ground at the time of the trouble. According to Burk and Burris, without Brown's doing anything, Ferguson picked up his shotgun, thrust it almost against the abdomen of Brown, and fired. Brown staggered about three steps and fell in the road, dead. Burk ran at once. Ferguson turned to Burris and said that if they were his friends, now was the time to show it; that they did not have to let anybody know who did it, and if they never told nobody would know who did it. Burris then went to Burk's, and left Ferguson with the body. Later, Ferguson came to Burk's. Ferguson said that he guessed he was in trouble, and that Brown was coming on him with a knife. The jailer testified that Ferguson told him that at the time he shot Brown, Brown was coming on him with a knife, and that he showed the jailer some cut places in his arm and in his jumper. Ferguson testified that Brown had cut him with the knife while they were on the horse, before they got to this old house, and he said at the time of the shooting Brown had this knife in his hands and was making an attack on him; that he said to Brown, "Don't come on me, Float;" that Brown continued to advance, and he shot him. Neither Burk nor Burris saw Brown with the knife at the time of the shooting, or heard anything said. Brown's body was allowed to lie in the road in the rain until the next morning. Some parties gathered there and watched the body, but did not touch it. The next morning the body was turned over, and a knife was found in Brown's hand. There was mud on the handle of the knife and mud in the palm of Brown's hand.

The appellant is complaining of error of the court in the admission of evidence against him, but as he made no objection to the evidence offered, nor do we find any evidence in the record to which he could have made sustainable objection, that contention is without merit.

He contends that there was no evidence of malice, and that hence the court should not have given any instruction on murder for which he was convicted, and he contends the verdict of the jury is not sustained by the evidence. In other words, his contention practically amounts to claiming that the court should have instructed the jury peremptorily to find him not guilty. After the commonwealth established that Brown was dead, and Ferguson had killed him, it was then incumbent on Ferguson to justify or excuse his act by evidence. See Simmons v. Com., 207 Ky. 570, 269 S. W. 732; Pitts v. Com., 215 Ky. 837, 287 S. W. 32; 30 C. J. 142, sec. 352. Malice may be inferred when death is caused by the intentional and unlawful use of a deadly weapon, and the commonwealth having established the death of Brown from such use, in this case, it then devolved upon Ferguson to justify or excuse his act, or he must take the penalty. See Turner v. Com., 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329; Ashcraft v. Com., 68 S. W. 847, 24 Ky. Law Rep. 488; Kriel v. Com., 5 Bush, 362; 29 C. J. 1099, sec. 74.

The evidence for the commonwealth and that for the defendant was submitted to the jury under instructions not complained of as to form. The jury found against him, and its verdict is abundantly supported by the evidence.

The judgment is affirmed.