# Phillips v. Commonwealth.

(Decided December 21, 1928.)

NAPIER & HELM for appellant.

J. W. CAMMACK, Attorney General, for appellee.

Opinion of the Court by Commissioner Hobson— Affirming.

On Sunday, November 27, 1927, Lewis Phillips shot and killed Hobart Combs at Scuddy, a mining town on Carr's fork, in Perry county. He was indicted for willful murder and on trial of the case was found guilty, and his punishment was fixed at life imprisonment. He appeals.

It is first insisted on the appeal that the verdict is palpably against the evidence. The facts shown by the commonwealth are these: Hobart Combs was a merchant, and also the postmaster. His dwelling house was three doors from his store. He and his wife about 4 o'clock came back from a ride in a car. They were all sitting out on the porch of his house with several friends, and he had the baby on his lap. The railroad ran in front of the house. Lewis Phillips came walking along the railroad. When he got in front of Combs' house, he called to Combs to come out, that he wished to see him, but walked on. Combs got up and walked out to the railroad, and when Phillips saw this he turned around and came walking back to meet Combs. In the meantime he had gotten about 100 feet away. Combs put a cigarrette in his mouth, and with his hands at his side and no coat on walked on up to meet Phillips. When he reached Phillips, Phillips seized him with his left hand, and with his right hand shot him three times with a pistol. Combs died, practically, immediately. When Combs got up to go, his wife said to him, "You had better not go out there," and he said to her, "There is no danger." After Combs fell his pistol was lying at his feet, but the proof for the commonwealth is to the effect that he tried to draw the pistol after he was shot, and he fell before he could get it out, and it fell at his feet. The commonwealth proved by a number of witnesses that Phillips was either drunk or mad. It proved by one witness that Phillips had said he would kill Combs that day; also there was proof that he had gone to the door of Combs' store, and when the door did not open had kicked the door, and that on two other occasions during the day he had walked up the railroad past Combs' house and had returned in a few minutes.

On the other hand, the proof for the defendant was in substance this: That morning about 9 o'clock Combs

had called to him to come over, and when he came over Combs said: "I understand you owe me $10.00. I have a letter from your brother stating that you are supposed to pay me the money." Phillips said, "I paid my brother the money I owed him." Combs then said, "Somebody is going to pay me." Combs got angry, shook his finger at Phillips, and said, "Pay me that money or I will take it out of your hide." At this point a bystander intervened, and they separated. During the day, as shown by several witnesses, Combs threatened to kill Phillips before night, and these witnesses told Phillips of the threats. As he was passing along the railroad about 4 o'clock he did not call to Combs, but Combs called to him; he did not stop, but when he saw Combs following him he turned to meet him. Combs did not have a cigarette in his mouth and had a pistol in his hand. Phillips put his hand on his pistol, which was sticking out of his pocket, and could be seen. Combs said, "Drop that pistol, I have come to get you," and Phillips then shot from his pocket three times, thinking he was then in danger and only thus could save his life. He also showed that Combs had the reputation of being a dangerous, violent man.

On the other hand, the commonwealth showed that Combs was a man of good character, and the great weight of the evidence was to the effect that Combs had his hands down by his side with nothing in his hands as he approached Phillips, and that Phillips, before anything was said, seized Combs with his left hand and began shooting him with his right.

The jury are the judges of the credibility of the witnesses. The court cannot disturb the verdict because they believe one set of witnesses rather than the other. If the witnesses for the commonwealth are believed, the deceased was sitting on his porch with his baby in his lap; the defendant came by and called to him; the deceased put the baby down and went out to meet the defendant; put a cigarette in his mouth, and walked up to him with his hands down and with his coat off. When he reached the defendant, the defendant seized him without a word being said and shot him, pursuant to the purpose he had formed some hours before when he declared that he would kill the deceased before night, and after he had armed himself for this purpose. While the evi-

dence is contradictory, it clearly cannot be said that the verdict is palpably against the evidence.

The defendant also insists that the court did not properly instruct the jury on self-defense. The court gave the jury the usual instructions on self-defense without any qualification. The defendant insists that he was entitled to an instruction presenting his defense, and that the court should have told the jury that if the deceased brought on the difficulty and attacked him, placing him in danger, then he had the right to use such force as was apparently necessary to protect himself. But this court has steadily held that in such cases the instruction on self-defense is all that should be given. In Mullins v. Commonwealth, 172 Ky. 92, 188 S. W. 1079, the rule was thus stated: "It is always competent, when one is accused of guilt of a felonious homicide and seeks to excuse himself by a plea of self-defense, to prove the threats, assaults, menaces and lying in wait, which he has suffered at the hands of the deceased, when there is some evidence of acting in self-defense at the time and place of the killing, to shed the light upon the beliefs, motives, fears and necessities of the accused at the time of the homicide, and in some instances the probability of whether the accused or the deceased is the aggressor, but it is never proper to group these evidences in an instruction, because it places an undue emphasis upon such part of the evidence, to the prejudice of the other testimony in the case." Again in Conard v. Commonwealth, 214 Ky. 137, 282 S. W. 1082, in response to a like criticism, the court said this: "Conard's plea was self-defense, which was properly presented. He says that Hill was the aggressor, and that the court should have presented that feature of the case to the jury; but that was not necessary, as it made no difference why Conard was in danger. If he was not himself the aggressor, and was in danger, he had the right to defend himself."

In the brief, complaint is made of the ruling of the court in the admission of evidence, but counsel do not specify any error in this regard. The rule of this court is that it will not search the record for errors which the appellant himself does not call to the attention of the court, and that it is the duty of the appellant to point out any error relied on for a reversal of the judgment. However, the court has read the record with care, and it finds no error in the record prejudicing the substantial rights

of the appellant on the trial in the admission or rejection of evidence.

Complaint is also made of the misconduct of the commonwealth's attorney in his argument to the jury. It is complained that the commonwealth's attorney, among other things, said this: "I do not know whether Calloway Napier thinks Tice Stamper is the same good Tice Stamper he was when he was swearing for another defendant about six months ago." Mr. Napier was attorney for the defendant, and evidently he had criticized Stamper, who was a witness for the commonwealth. While the commonwealth's attorney should not have referred to a fact that occurred in another trial, this could not possibly have prejudiced the defendant before the jury. Such retorts between counsel are common in jury trials, and prove nothing. It is only where the substantial rights of the defendants are prejudiced that a new trial may be granted for error of the commonwealth's attorney. Hines v. May, 191 Ky. 493, 230 S. W. 924.

The commonwealth's attorney also said this: "You will have to find the defendant guilty of murder under the first instruction and under the law and evidence in this case, and will have to put him in the electric chair or send him to the penitentiary for life. But, gentlemen of the jury, if you send him to the penitentiary for life, that don't mean much, it only means eight and one-third years in the penitentiary."

Plainly, the defendant was not prejudiced by this, for the jury only fixed his punishment at life imprisonment, and this court has steadily refused to reverse for such statements by the commonwealth's attorney. Moore v. Commonwealth, 223 Ky. 132, 3 S. W. (2d) 190, and cases cited.

Lastly, the commonwealth's attorney is complained of because he said this: "The defendant fixed up his defense." The evidence for the commonwealth was very conflicting with the evidence introduced by the defendant. The defendant's own statements were entirely at variance with the proof of the commonwealth. The statement that he had fixed up his defense was only a statement, in substance, that he had not stated the true facts. This was simply an argument to the jury based upon the conflicting evidence in the case and the facts shown by the proof. Such arguments are not improper where the

evidence is conflicting and are confined to the proof before the jury.

In his motion for a new trial the defendant alleged that he had newly discovered evidence contradicting the witness Stamper; but his own showing fairly read would indicate that he learned of this before the conclusion of the trial, and it is well settled that such a ground to be available must be presented as soon as it is discovered, for the defendant cannot take the chance of winning his case and then complain when he loses it. The rule is that newly discovered evidence, which merely goes to contradict or impeach a witness, is not sufficient for the granting of a new trial. Ellis v. Commonwealth, 146 Ky. 726, 1143 S. W. 425.

Lastly, it is insisted that a new trial should be granted on account of bias on the part of one of the jury, but the evidence on this subject was conflicting, and the decision of the circuit court is not against the weight of the evidence.

Judgment affirmed.