## Wooten v. Commonwealth.

(Decided Oct. 14, 1932.)

B. G. ELLIS for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The storeroom of the Durham Grocery Company in Columbia, Ky., in which it conducted a general merchandise business, was broken into about midnight on September 23, 1931, and goods and merchandise were taken therefrom, consisting mostly of cigarettes, of the value of $225. Later the appellant, Robert Wooten, was indicted and accused of committing that offense, and on his trial, following the indictment returned against him, he was convicted and punished by confinement in the penitentiary for a period of five years. His motion for a new trial was overruled, and from that order, and the verdict of the jury, and the judgment pronounced thereon, he prosecutes this appeal, urging by his counsel as grounds for reversal: (1) Failure of the court to give to the jury the whole law of the case; (2) error in the admission of evidence offered by the commonwealth; (3) the verdict is flagrantly against the evidence and the punishment excessive; and (4) improper argument of prosecuting counsel in his closing argument to the jury.

The last ground, (4), is not relied on in the motion for a new trial, and for which reason alone, under a firmly settled rule of practice, we cannot consider it. However, if it were otherwise, we have examined the statement of counsel complained of and find it absolutely free from improper practice. It consisted in urging the jury, if it found defendant guilty, to visit upon him the maximum punishment provided by law in order to rid society of the immense horde of depredators of like character with which the country was well known to be infested. We discover nothing improper in the suggestion of counsel, since the purpose of punishment is the prevention of crime, and the more severe it is the greater the preventive effect.

Before disposing of either of the other three grounds, it will be necessary to make a brief statement of the facts, as is clearly disclosed by the testimony and so found by the jury. A night policeman was some two or three blocks away from the store near the hour of midnight of the day it was broken into. He discovered that something was happening at the store, and in looking he discovered an automobile by the side of the building. He notified another officer, and perhaps one of the stockholders in the corporation operating the store, and he started towards it, but before he reached it he observed two persons coming out of the store with some packages and placing them in the automobile in which there was a third party. It was then driven away with all three of the perpetrators in it, going rapidly in the direction of Greensburg, Ky. It was later discovered that the glass in one of the entrance doors into the storeroom was broken and the merchandise that was later found was missed from the stock it contained.

A posse was organized, and it pursued the perpetrators of the robbery, and when they got to the bridge across Green river near Greensburg they discovered a parked Chevrolet automobile, which was the one driven away from the store, as seen by the policeman, but it had been abandoned by its inmates. A recent rain had softened the ground around the place, and human tracks were discovered leading into an adjacent field, and which were pursued for some distance but eventually lost. The automobile contained merchandise that was positively identified by the owner of the store as a part of its contents. Some of it so found was in

original packages which had the address of the firm upon them.

The appellant, Henry Jones, and Guy Deathridge appeared early the next morning at the farmhouse of a Mr. Young and inquired the way to the Jackson highway. They were walking, and bore indisputable evidence of having traveled through mud and through fields. Jones was soon apprehended, while appellant was not arrested for some weeks thereafter, and Deathridge made his escape. The witness, Young, also testified that on the day preceding the night of the robbery the same three (appellant, Jones, and Deathridge) passed his home in a Chevrolet automobile with an Ohio license upon it, and after the robbery he identified the automobile in which the stolen property was found as being the same one that was in possession of the three when they passed his house on that occasion. Before appellant was arrested, Jones had been indicted and convicted for his participation in the crime, and, when he (appellant) was arrested, he inquired of the officers what punishment was visited upon Jones, and he was informed that it was one year in the penitentiary, when he remarked that he was willing to accept the same verdict. Mr. Durham, one of the principal owners of the store as a stockholder of the corporation, positively identified appellant as the person whom he saw peeping in the window of the store building late on the afternoon before the crime was committed that night.

The accomplice Jones was introduced by the commonwealth. He had previously confessed to the crime and implicated the appellant and Deathridge. When taking the stand, he first declined to answer questions propounded to him, but after being fined for contempt, he relented and completely corroborated his prior confession and told in detail the forming of the plan between himself, appellant, and Deathridge to rob the store of the Durham Grocery Company, and that they carried it out, as other proof in the case established. There were some proven circumstances of more or less guilty persuasion, but the general outline of the testimony that we have made is amply sufficient to sustain the verdict and to produce the belief in appellant's guilt beyond a reasonable doubt, and which conclusion necessarily dispenses with ground 3, and no further

mention will be made of it, leaving only grounds 1 and 2 to be determined.

In support of ground 1 it is argued with much earnestness (a), that the court should have sustained appellant's motion for a peremptory instruction of acquittal, but what we have already said effectually adversely disposes of that argument. It is also contended in support of the same ground (b), that the court in instructing the jury should have told them what was necessary to constitute an "unlawful breaking" within the meaning of the statute. The trouble with that contention is that there was no dispute in the testimony about the fact of the necessary breaking of the pilfered store to call for the definition contended for. If there had been a contrariety of evidence as to whether there had been a burglarious breaking into the store so as to cast a doubt upon that element of the crime, it perhaps would have been necessary for the court to define the term "unlawful breaking"; but, where the undisputed facts show that the breaking was accompanied with the necessary force to make it unlawful, then no such definition is required. The precise question was so determined by this court in the case of Radley v. Commonwealth, 121 Ky. 506, 89 S. W. 519, 520 Ky. Law Rep. 477 (not elsewhere reported). On the question involved we said:

"The court did not err in failing to define what constitutes an unlawful breaking. If there had been any serious question as to whether or not there was a breaking within the meaning of the law, the position of appellant would be sound; but the evidence showed, without contradiction, that the window through which the entrance was made was securely fastened, and was pried open by means of some instrument of the nature of a chisel, the mark of which was left plainly upon the window sill. Appellant's defense was not predicated upon the question as to whether there was, or not, an unlawful breaking, but that he was not present at the time the crime was committed."

Contention (b), therefore, is without merit, and it is overruled.

An additional argument in support of this ground is (c), that the indictment accused appellant alone of

having committed the crime, while the evidence was practically conclusive that he did so in connection with Henry Jones and Guy Deathridge, and the court in view of that evidence instructed the jury that, if it believed therefrom beyond a reasonable doubt, "that the defendants, Robert Wooten, Henry Jones and Guy Deathridge, * * * did together" commit the crime, then it should find appellant guilty. It is argued by counsel that the coupling together in the instruction of Jones and Deathridge as joint offenders with appellant was a most grievous error, but, notwithstanding counsel's most earnest argument, he has failed to so convince us.

On the contrary, the instruction was perhaps more favorable to defendant than he was entitled to, since the jury may have found that neither Jones nor Deathridge were participants in the crime, but that appellant committed it alone, and under the strict letter of the instruction an acquittal would have been authorized in that event. Surely the technicalities of the law have not reached to the expanded limits of releasing a guilty offender because he was accused of committing the crime unassisted, while the proof showed that there were others who participated with him in doing so. We therefore conclude that this last argument (c) in support of ground 1 is also without merit.

The arguments in support of ground 2 are so intermingled with others advanced in brief of counsel that it is difficult for us to classify them, or to clearly indicate in this opinion the precise objections that are made thereby. The best that we can gather from brief is that they are (x) the testimony of Jones, who told the entire story implicating appellant, was improper and erroneous, and (y) the admission of the testimony of the various witnesses who stated that the automobile employed in the robbery had upon it an Ohio license, without further stating the number thereof, since it is argued, that there are many auotmobiles passing through this state with Ohio licenses and that the evidence was misleading and improper, without giving the particular number. But that argument, if sound in any event, is dissipated when it is remembered that some of the witnesses at Columbia identified the particular automobile with the Ohio license as being the one that was at the store that night and into which two of the offenders loaded some of the stolen merchandise, and the witness, Young, who saw the parked automobile

near the Green river bridge, positively identified it, as we have already stated, as being the same one in which appellant and his accomplices were riding when they passed his residence on the afternoon of the day before the offense was committed that night.

Jones was an accomplice, and the court properly instructed the jury under section 241 of the Criminal Code of Practice, and we are informed of no fact militating against the competency of his testimony viewed in the light of that instruction. We therefore conclude that neither of the arguments (x) or (y) is available.

Appellant attempted to establish an alibi, but the testimony of himself and his two witnesses in support thereof is hazy, incredible, and wholly wanting in convincing force. However, if it had been otherwise, it was for the jury to determine whether that defense would be accepted or rejected. It adopted the latter course, and with which we coincide.

Having disposed of all the arguments made in this court for a reversal of the judgment, and having reached the conclusion that none of them is sufficient to authorize us to do so, it follows that the judgment should be and it is affirmed.