## Drake v. Commonwealth.

(Decided March 6, 1936.)

108

LOUIS P. MANIATIS and WILLIAM KIEL for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Alford Drake, prosecutes this appeal from a judgment entered on a verdict of the jury finding him guilty of murder and fixing his punishment at death.

It appears from the record that both the deceased and appellant are negroes who at the time the offense here in evidence was committed lived in Louisville, Ky., where the deceased, James Edward Simpson, was employed and serving as a merchant policeman.

The appellant, Drake, a younger man, was caught by the deceased officer on the early morning of April 14, 1935, as he was coming out, or just after he had come out, of the Ben Zeiden grocery store at Fifteenth and Madison streets with some goods which he had stolen from the store, after first breaking through the window to gain entrance.

Just after Drake came out of the store, Simpson discovered him with the stolen groceries, which he had in a sack, and thereupon undertook to place him under arrest. It was then about 3 o'clock in the morning, and no one else was present, but shortly afterwards colored friends of the deceased, who lived in the rear of the grocery, answered his call and came to his assistance. He asked one of them, Garland Cole, to 'phone the police for help, when Cole, a witness for the commonwealth, testified that, as he did not have the required nickle for making the requested telephone call, Simpson undertook to reach in his pocket and supply it, and while so doing he transferred his gun over to Cole, telling him to keep defendant covered with it. As Cole sought to hand him back this gun, Drake grabbed it from him and ordered them all to "stick them up." Simpson's helpers, Cole and a negro woman, both ran away, leaving Simpson holding up his hands, as ordered, as he attempted to back away from

Drake, "all the time asking him not to shoot him." However, when Simpson had thus backed away some 20 feet, Drake shot and killed him.

This version of Simpson's killing, so given by the witness, Cole, is fully and substantially corroborated by the like testimony of other witnesses for the commonwealth, who were then present and eyewitnesses to these facts and circumstances leading up to the shooting and killing, except as to seeing the defendant at the very second he fired the one shot that killed Simpson, which they testify they did not see, for the reason that Simpson had at that instant backed out of their view, around the corner of the store when he was shot by appellant, though they were then close by and heard both the shot fired and Simpson's cry that he was shot.

Also the further evidence for the commonwealth, identifying Drake as his murderer, is that Simpson's gun, with which he was shot by defendant, was a German pistol of unusual mechanism, and so constructed that it could not be accidentally discharged, but required for its firing the simultaneous pressing of the handle safety and the pulling of the trigger, and that this unusual mechanical feature of the gun made much easier and more certain the later identification had of it. Further, evidence for the commonwealth was that the deceased was killed by a bullet fired from this pistol by the defendant when the deceased was not at close range but some distance from him, as a ballistic expert also testified the facts in evidence showed.

Also it was further shown, and undenied by appellant, that after shooting the deceased he had sold or pawned this pistol, taken by him from Simpson's assistant, to one Tyree Young, who so testified and identified the gun introduced in evidence as being the same he had bought from him the following Easter Sunday. The evidence for the commonwealth further showed that appellant shot and killed the deceased upon this occasion, as was later admitted by him, but claimed it was done accidentally during the scuffle for the pistol.

Also the defendant, when testifying in his own behalf, states that on the night of and just before his killing of the deceased, he was on his way home and came to Zeiden's grocery at the corner of Fifteenth and Madison streets and that, "well, quite nat-

urally, I broke in the store, all right. No one didn't see me. When I got out this here man come up to me with a pistol and stuck me up. I didn't know who he was, he didn't tell me he was an officer, he didn't say I was under arrest, and another fellow came up there and he asked the other fellow to hold this gun on this boy, while I get a nickle. When he handed the other man the gun, he hit me with his blackjack and on the side of the head. That was when I snatched the gun. When I snatched the gun this man broke and run and the woman broke and run. When we were scuffling there on the corner the gun went off and shot him. He ran around the corner and I went across the street." He further testified that he did not know how the gun went off, that he didn't pull the trigger; that it just went off during the scuffle; that he tried to get the deceased to turn loose but he would not. On cross-examination he admitted that he had pawned the gun, also that he had just before broken into the store and was caught as he was coming out, or just after he had gotten out, by the deceased; that at the time he did not know who the deceased was, as he did not show him any badge and did not tell him he was an officer; that he did not know exactly what deceased was doing,"so many funny things are pulled off like that"; that he did not hear deceased tell Cole to call the police, though he did hear him tell the woman to go and get some help; that he did not know he had shot the man until the gun went off in the scuffle; that he did not know when he left there that the man had been shot, as he was running when he shot him. Also he stated that he had been in the penitentiary twice before for other crimes committed.

Upon the conclusion of the evidence, the jury was very clearly, appropriately and thoroughly instructed by the court upon every phase of the evidence and covering every theory, both of the prosecution and the defense, based thereon. The jury thereupon, after hearing the evidence, the instructions thereon and argument of counsel, returned a verdict finding the defendant guilty of murder and fixing his punishment at death.

Defendant's motion and grounds, consisting of some fourteen assignments of error, having been overruled, he has appealed.

While appellant refers to and discusses in a gen-

eral way all of these several grounds set out in his motion for a new trial, he, by counsel, states in his brief that· "The only real question involved in the case is the degree of guilt of this defendant, who admits having broken into the grocery and having shot the deceased, but claims that this was done in a scuffle and there was no premeditation to the shooting"; and further insists that: "It is not justice to convict a man of first-degree murder because he is caught robbing a grocery store and in a scuffle shoots one whom he does not know to be an officer, even though that one had the power of arrest though not an officer."

At this point it seems not amiss to state that it appears by the record that this young negro defendant was without funds with which to employ counsel, and that the court was, for such reason, called upon to appoint counsel to represent him upon his trial. Also it appears that the attorneys so appointed accepted the unpleasant task and have loyally and earnestly represented appellant upon his trial in the lower court and are here presenting his appeal, to the end that the accused, in so far as their experience and skill permits, might in all respects receive a fair and impartial hearing and trial of his case.

While this duty has been performed by counsel for appellant, we nonetheless, in view of the severe penalty imposd upon appellant, deem it advisable to review somewhat fully the different grounds urged for a reversal of the judgment, even though most of them are not here insisted upon nor argued by counsel in brief.

In the motion and grounds for a new trial, the appellant urges, first, that the verdict was contrary to the law and the evidence. Clearly, as the instructions given fully warranted the verdict found by the jury, it cannot be assailed on this ground as being contrary to law. Because of the nature of a further objection, that the verdict is against the evidence, we have fully summarized, supra, the evidence in the case, which very sufficiently and amply, it would appear, supports the verdict of guilty as returned. Appellant's contention urged in support of this objection is that, although admitting that he shot and killed the deceased, he is, notwithstanding this, not guilty of the charged offense of murder, as he did so, not willfully, but accidentally, while scuffling with him for the possession of the pistol. The commonwealth's contention, on the other hand, is

that Drake shot the deceased, not accidentally, but willfully, and while the deceased was backing away from him, with upheld hands and begging him not to shoot him. Also, by ample evidence brought before the jury, it was shown that deceased was not shot while engaged in a struggle over the pistol at close quarters with the defendant, as there were found no burns or powder stains about or upon the deceased, as testified by the ballistic expert and other witnesses. Accused, having admitted that he killed deceased, assumed the burden and was required to establish justification or excuse, as party committing homicide must establish legal excuse therefor to avoid conviction. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732; Spicer v. Commonwealth, 209 Ky. 395, 272 S. W. 909; Pitts v. Commonwealth, 215 Ky. 837, 839, 287 S. W. 32; Fleming v. Commonwealth, 219 Ky. 697, 294 S. W. 153; Ferguson v. Commonwealth, 224 Ky. 151, 5 S. W. (2d) 897.

The plea being not guilty and the evidence being thus conflicting, it became the problem of the jury to determine what were the true facts. Its finding was guilty as charged. Sorrels v. Commonwealth, 197 Ky. 761, 248 S. W. 205. Under the well-settled rule of this state, we are not in such case authorized to disturb the verdict of a jury on the facts, unless the verdict is palpably against the evidence, as a conviction is not to be set aside merely because deemed by us to be against the preponderance of the evidence, nor will the evidence in a criminal case be reviewed by this court to see that it justifies a conviction (Maggard v. Commonwealth, 257 Ky. 414, 78 S. W. [2d] 315); that is, conflicting evidence in a criminal case will not be reviewed on appeal for the purpose of determining its weight. Adkins v. Commonwealth, 245 Ky. 503, 53 S. W. (2d) 949; Cornelius v. Commonwealth 54 Ky. (15 B. Mon.) 539.

Further, grounds 3 and 4 of the motion deal with the competency and incompetency of evidence, urged by the appellant to have been erroneously admitted or rejected. A careful examination of the record, however, fully persuades us that no error of this character was committed by the court.

Ground 5 relates to the manner in which the commonwealth's attorney conducted his examinations, direct and cross, during the trial.

Counsel in his brief, however, does not point out where or in what instance this occurred, and our own study of the transcript leads us to conclude that there is no merit in this ground. Also this court will generally not search the record for errors not specifically called to its attention by the appellant, whose duty it is to point out any errors relied on for reversal. Hines v. May, 191 Ky. 493, 230 S. W. 924. We have, however, in view of the special circumstances under which this appeal is before us, deemed it not unfitting, on account of the gravity of the punishment inflicted, to here accept the invitation thus given us, and have "searched the record" to detect material errors claimed lurking therein but without discovering any.

Ground 6 complains of error committed by the trial court in not sustaining defendant's objection "to the inflammatory remarks made by the commonwealth's attorney in his closing argument," wherein it is alleged that he went out of the record and misquoted the testimony of witnesses in the case.

This complaint, it is strongly insisted, is entitled to serious consideration, and is one which clearly entitles appellant to a new trial. This argument is sound and forceful, if, upon its consideration, it is found that the commonwealth's attorney has herein been guilty of misconduct in the way and respect charged, and that same, even if conceded to have been improper, has also served to prejudice appellant's substantial rights. Phillips v. Commonwealth, 227 Ky. 212, 12 S. W. (2d) 305. A prosecuting attorney is charged with the duty of seeing that accused is fairly dealt with and that his legal rights, as well as those of the commonwealth, are fully protected, and, even in their zeal to procure a conviction, they should not nor are they permitted to lose sight of the fact that they are officers of the court, properly motivated when only seeking upon trial the law's enforcement and the meeting out of even handed justice to all. Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14.

It appears from the transcript record that the commonwealth's attorney used this criticised language in his closing argument:

"If there should be among you a gentleman who is weak-kneed, who lacks the courage to vote for the death penalty, then I urge other gentlemen,

who are men of courage, to hang this jury so that we might try this case again, and give another jury an opportunity to return the death penalty which is so richly deserved by this defendant.''

Complaint of this argument as objectionable and as tending to prejudice and bias the jury is made both in brief and bill of exceptions, though the record does not disclose that objection was at the time made to the argument or the court asked to admonish the jury not to consider it. For such failure, generally the objection will be treated as waived and not considered. Bradley v. Com., 204 Ky. 635, 265 S. W. 291.

In the case of Chaney v. Commonwealth, 251 Ky. 80, 64 S. W. (2d) 461, 462, it was held that in a murder prosecution commonwealth's attorney's argument that, if one juror should hesitate about signing death verdict, others should not vote for a life sentence but give commonwealth's attorney chance to work on case again, was not improper. Further, the opinion, in commenting on this question, stated:

> ''The argument complained of was nothing more than an appeal to the jury to fix the punishment at the maximum provided by law, and we find nothing improper in the remarks of the commonwealth's attorney. Wooten v. Commonwealth, 245 Ky. 266, 53 S. W. (2d) 557.''

While we are inclined to look with disapproval upon the language of the complained of argument made that,

> ''If there should be among you a gentleman who is weak-kneed, who lacks the courage to vote for the death penalty, then I urge other gentlemen, who are men of courage, to hang this jury,''

etc., which challenges the jury to return a death verdict or else be regarded as weak-kneed and lacking in courage, regardless of what their views under the evidence might be as to defendant's degree of guilt, we are yet of the opinion that, even though such appeal was improper, it yet appears that no prejudice was done to appellant's rights in this case, where the evidence was so abundantly sufficient to arouse the jury's feelings, independently of such objectionable character of argument, and to most reasonably account for and support the verdict returned by the jury, just as

the rationale of the court's holding was in the Chaney Case, supra, upon very ample evidence and similar language there employed in objectionable argument. The rule is that improper argument to warrant a reversal must be found to be not only improper but also substantially prejudicial.

Grounds 7 and 8 of the motion for a new trial are directed at the instructions, ground 7 being that the court erred in not giving the whole law of the case, and ground 8 being that the court failed to "define accident" to the jury as used in the instruction 6 on accidental killing.

First considering ground 7, it may be conceded that it is the duty of the court to give the whole law applicable to the case, even though it may not be asked for. Neither is it necessary that an exception be taken by the accused in order to save his right to have reviewed his criticism of the given instruction. Commonwealth v. Louisville & N. R. Co., 175 Ky. 250, 194 S. W. 303. Again has this rule been announced that the court must give proper instructions without qualification upon every phase of homicide which has substantial basis in evidence. Williams v. Commonwealth, 258 Ky. 830, 81 S. W. (2d) 891. Also it is stated that "instructions must be based upon the evidence and given to suit the case in hand." Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14, 19.

A careful review and consideration of the instructions here given persuade us that they fully comply with this declared duty of the court, to so instruct the jury as to cover the whole law of the case upon every phase of homicide which here had any substantial basis in evidence. The instructions given by the learned trial judge, which are here complained of, are lucid, precise, and comprehensive, and it is our conclusion, without reservation or doubt in any particular, that they fully covered the whole law of the case and every phase and theory of the appellant's defense which had any substantial support in the evidence.

The next objection is that instruction No. 6 on accidental killing was erroneous, by reason of the court's failure to define the word "accidentally" as therein used. The instruction complained of is as follows:

"The court instructs the jury that if they believe from the evidence that the shot which killed said

J. E. Simpson was accidentally and unintentionally fired by the defendant, and that his act in firing said shot was not wilful and with malice aforethought as defined in Instruction No. 1, or the result of the negligence or carelessness handling of the weapon as defined in No. 2, they should find the defendant not guilty."

It is difficult to see how a clearer instruction upon this question could have been submitted to the jury than was here submitted or how a further definition of the term "accidentally" could have been submitted to the jury which would have made the term more easily understandable by the jury than was afforded both by the word used and the context of the instruction further defining it. The language was:

"If they believe from the evidence that the shot which killed said J. E. Simpson was accidentally and unintentionally fired by the defendant, and that his act in firing said shot was not wilful and with malice aforethought as defined in Instruction 1,"

etc., the jury should find defendant not guilty. This language employed in itself afforded as clear and proper a definition of the word as could have been given. The purpose of an instruction is to submit the law applicable to the facts in a form capable of being clearly and easily understood by the jury, and it is our conclusion that such purpose and object was here well realized by the instruction as given, and therefore the criticism made of it is without merit.

The additional grounds set out in a second motion for a new trial first recite that the court erred in failing to sustain defendant's motion. Defendant does not specify or particularize what motion is here complained of as having been made and refused. On the other hand, our examination of the record clearly shows that appellant's motions, in practically every instance, were supported by the court and appellant's rights fully protected by it.

Additional ground 2 complains of the overruling of the demurrer to the indictment. This objection is altogether frivolous. The indictment speaks for itself. No defect appears therein nor is any pointed out by appellant.

Additional ground 3 objects that the verdict was the result of passion and prejudice. This objection also must be regarded as without merit, in view of the character of the evidence pointing to the appellant's guilt, nearly all of which is admitted by him. As forcefully argued by brief of appellee, he admits that he was in the penitentiary in Michigan; further, he admits the robbery of the store upon the occasion in question; that the pistol was in his hands at the time it was discharged and killed the deceased policeman, which he attempts to justify by saying it occurred in a scuffle had with the deceased at the time he did not know he was a policeman. As against this, there is ample evidence showing that the deceased police officer was killed at a time when he had his hands up, was backing away, and begging the appellant not to shoot him.

The severe verdict returned we conclude was the result of this ugly and criminal evidence, strongly invoking it, rather than of passion and prejudice otherwise or improperly aroused in the jury.

Additional ground 5 raises the question that defendant was denied certain rights guaranteed him under the Fifth Amendment of the Constitution. He does not point out wherein any claimed error of the court resulted in denying him a fair trial. He does, however, in his brief as set out above, complain that the only real question involved in this case is not one of the guilt but the degree of defendant's guilt. He asserts that it is not justice to convict a man of first degree murder because he is caught robbing a grocery store and in a scuffle shoots another; that under such circumstances he is properly guilty of voluntary manslaughter and of storehouse breaking.

It is sufficient answer to this to say, that nothing appears in the record whatever indicating that the appellant is being deprived of life or liberty without due process of law or that he has not received a fair and impartial trial. Only in such case can a reversal of a judgment of conviction be had. Section 340, Criminal Code of Practice; Carter v. Commonwealth, 258 Ky. 807, 81 S. W. (2d) 883.

Further answer as to this, we find was made in case of Prater v. Commonwealth, 241 Ky. 510, 44 S. W. (2d) 536, 537, where the like contention was there

made as here, that the punishment inflicted upon appellant was too severe, to which the court there answered "that the amount of punishment within the statutory limits is clearly within the province of the jury to determine," and it quoted with approval from the language of the opinion rendered in the case of King v. Commonwealth, 228 Ky. 842, 16 S. W. (2d) 476, 477, where we said:

"The only other complaint is as to the severity of the punishment. That is not a question for this court. When the evidence is sufficient to take the case to the jury and uphold the verdict, the punishment which shall be inflicted is solely within the discretion of the jury. Baughman v. Commonwealth, 206 Ky. 441, 267 S. W. 231."

The appellant here has received the severest penalty known to the law, but this homicide was murder without excuse or explanation, and he cannot now complain of this severe verdict, which metes out to him a sentence of death for the willful and brutal taking of life. Therefore, as we conclude that there is no merit in any of the contentions of appellant upon which he relies for reversal, the judgment must be, and it is hereby, affirmed.

Whole court sitting.