## JAMES H. GALLOWAY *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 4—720.]

### Indictment to Be Read in Homicide Case.

On the trial of a felony case the indictment is required by Crim. Code (1876), §§ 155, 219, to be twice read, once by the clerk to the defendant; which may be dispensed with by his consent, and once to the jury by the clerk or commonwealth's attorney.

### Time of Reading Indictment to the Jury.

In a felony case Criminal Code (1876), § 219, requires the indictment to be read to the jury by the clerk or commonwealth's attorney and a statement of the defendant's plea thereto, next in order after the jury is sworn, but where such indictment is not read, and the plea stated at that time, but the reading and statement take place before the close of the evidence for the state, in the absence of a motion of the defendant to recall the witnesses and reintroduce the evidence, there will be no reversal, as the substantial rights of the accused are not prejudiced by the omission to read the indictment at the proper time.

### Waiver by Defendant of Objections.

A defendant charged with a felony can not be heard to complain in the Court of Appeals of correctible errors made in the lower court, when he neither made objection to them nor excepted to the action of the trial court at the time.

### Competency of Witnesses.

Where two or more persons are jointly indicted for the same offense, each is a competent witness for the other, unless the indictment charges a conspiracy between them; and even where conspiracy is charged each is a competent witness for the other unless there is evidence submitted which in the opinion of the trial judge estab-

lishes with reasonable certainty the existence of such a conspiracy, and the judge will determine such question from all of the evidence introduced by the state and the accused.

**Res Gestae.**

Declarations to be admissible as part of the res gestae must be contemporaneous with the fact; yet when they are connected with or grow out of it, they may even when made after a lapse of time be admissible.

**Res Gestae—Continued.**

On the trial of an accused person for murder a statement made by him a few minutes after the killing, near the place and in the hearing and presence of witnesses not called by the commonwealth, is admissible for the prisoner as part of the res gestae.

APPEAL FROM MERCER CIRCUIT COURT.

February 22, 1883.

OPINION BY JUDGE LEWIS:

Appellant, having been tried separately under a joint indictment against him and Frank Galloway, his brother, for the murder of William Southern, and convicted of manslaughter, prosecutes this appeal.

The objection that the indictment charges two distinct offenses can not be sustained. But one offense, murder, is charged, the statement that they "did conspire, confederate and agree to and did kill and murder" being equivalent to stating that the crime of murder was committed in pursuance of a conspiracy between them.

One of the errors complained of is that the indictment was not read nor the plea of the defendant stated to the jury previous to the introduction of evidence for the commonwealth, and not at any time by the clerk or commonwealth's attorney. It appears that at the close of the examination in chief of the last, but one, of the witnesses for the prosecution the commonwealth's attorney stated to the court he had failed to read the indictment and state the plea of the defendant, and then offered to do so, to which the defendant objected. But the objection was overruled and thereupon the indictment was read at the request of the commonwealth's attorney, by an attorney employed to prosecute, and the plea stated.

On the trial of a felony case the indictment is required by the Criminal Code to be twice read, once by the clerk to the defendant, which may be dispensed with by the court with his consent, and

once to the jury by the clerk or commonwealth's attorney [Crim. Code (1876), §§ 159, 219]. The record shows that the arraignment was dispensed with, and the defendant pleaded not guilty. But § 219, which requires the clerk or commonwealth's attorney to read the indictment and state the plea of the defendant to the jury, next in order after they are sworn to try the issue, was not complied with as respects either the officers whose duty it is to do so, or the time prescribed.

The language of the section is mandatory, and no party can be legally convicted under an indictment unless its requirements are substantially complied with. If the verdict in this case had been rendered by the jury without having heard the indictment read and plea stated before the conclusion of the evidence by the commonwealth we should have felt constrained to reverse the judgment upon that ground; for we are not permitted to assume or to speculate as to the probability that the jury in any given case have been fully and correctly informed in regard to or that they comprehend the issue they are sworn to well and truly try, where it appears that the mode of informing them, that the law peremptorily requires to be pursued, has been disregarded altogether.

But in this case, though not done at the precise time required by the Criminal Code, the duty was performed before the close of the evidence for the commonwealth, while it was still in the power of the court to recall the witnesses and give to the party desiring an opportunity to re-examine them. As no motion was made for the recall of the witnesses we do not perceive how the substantial rights of the appellant were prejudiced by the omission now complained of. Nor is the mere fact that the indictment was read by an attorney employed to prosecute, instead of the clerk or commonwealth's attorney, ground for reversal, having been done at the request of the latter officer in the presence of the court and of the defendant without objection made at the time.

While appellant was entitled to be tried in the mode prescribed by law, and to appeal to this court for reversal of errors to the prejudice of his substantial rights, he can not be heard here to complain of correctible errors he objected to have corrected by the lower court, or of one he failed to except to at the time the law makes it his duty to except.

The next error complained of is the refusal of the court to permit Frank Galloway, whose evidence it clearly appears was important,

to testify as a witness in behalf of appellant. Criminal Code (1876), § 234, is as follows: "If two or more persons be jointly indicted, for the same offense, each shall be a competent witness for the others, unless the indictment charges a conspiracy between them."

In the case of *Christian v. Commonwealth*, 13 Bush (Ky.) 264, this court, construing that section, held that "although a conspiracy is charged in the indictment, defendants jointly indicted are competent witnesses for each other, unless there is such evidence as, in the opinion of the court establishes with reasonable certainty the existence of the alleged conspiracy." According to that construction the question of competency in such a case as this is to be determined by the court from the evidence introduced on the trial. The inquiry, however, should not, as contended, be limited to the evidence offered by the commonwealth, but the opinion of the court should be formed from the evidence in the whole case, such weight as it may deserve being given to the evidence introduced for the defense as well as that of the commonwealth.

It is shown by the evidence that at the time the deceased was killed he was residing upon a "bottom" farm with his sister-in-law, but who owned or controlled it does not appear, and in order to open a passway to a public road was engaged in tearing down and rebuilding nearer the dwelling house a plank fence that had stood between the farm and the land of McCann, who was a brother-in-law of appellant and Frank Galloway, and with whom they resided. At the same time McCann and appellant were engaged in building a worm fence parallel to and a few feet from the plank fence deceased was building. No ill feeling is shown to have existed between McCann and deceased on account of the removal of the division fence, and why appellant and Frank became offended at him on that account, if they did so, does not appear. Though appellant and deceased were employed near each other in building the two fences from about 9 o'clock in the morning until 2 or 3 o'clock in the afternoon, when the killing was done, no harsh language or hostile demonstration on the part of either is shown to have occurred.

The commonwealth introduced no witness who saw the beginning of the difficulty that resulted in the death of Southern. One of them, his niece, testified that when she heard the first pistol shot she got up and saw, through the window of the room she was in about forty yards off, appellant standing on the right side of and

about twenty feet from deceased with a pistol in his hand and Frank about the same distance in front of him; that both of them shot at Southern, four shots being fired, and he fell about twelve feet beyond the worm fence upon the land of McCann, wounded on the right side of his head and right shoulder, and that as soon as he fell they left, going in the direction of their home.

Two other witnesses were in the house at the time, who testify to the number of shots fired, but neither of them saw the shooting nor the two parties until they started to leave. Frank Galloway was not seen upon the ground by any of the witnesses for the commonwealth until after the firing began, nor was he there until a short time before.

Two witnesses testify to conditional threats of violence to deceased previously made, their statements being substantially that Frank said he would kill him if he tore the fence away, appellant remarking at the same time and in the same conversation that he had good pistols. They also testified that they both threatened to kill deceased if he did not leave the "bottom." The evidence of McCann, who was present, and of James Galloway, the father of the appellant, who stated he was thirty-five or forty yards off, shows that deceased commenced the altercation, threatening to kill both appellant and Frank Galloway, and did actually assault the latter with a hatchet before any shot was fired. According to their evidence, the shooting was done by Frank Galloway alone, and done in his necessary self-defense, appellant not participating in it at all. The mother and sister also testified that deceased had made conditional threats against both of them.

If the evidence of witnesses for the commonwealth be alone considered the conspiracy charged in the indictment was established with reasonable certainty, and the evidence of Frank Galloway was properly excluded. But if credence be given to the evidence of James Galloway and McCann then the existence of the alleged conspiracy as well as the guilt of the appellant is negatived. We are unable to perceive how the court could, without disregarding their evidence, have excluded that of Frank Galloway. But from necessity a question like this must to some extent be left to the discretion of the judge who presides at the trial, and who is in the best position to correctly determine it. Therefore, in view of the fact that the credit for veracity of James Galloway was impeached, and both he and McCann were shown to have previously

made statements contradictory in important particulars to those they made on the trial, we do not feel authorized to say that upon the evidence admitted and heard at the trial the court erred in excluding the evidence of Frank Galloway.

But appellant complains that the court erred to his prejudice in refusing to permit the witnesses introduced to contradict James Galloway to tell all he said on the subject at the time he made the alleged contradictory statement, and also in excluding from the jury what was said to James Galloway by Frank Galloway about the killing immediately after it took place. If these rulings of the court were such as to deprive appellant of any evidence he was legally entitled to, or to destroy or impair the legitimate effect of that which was introduced in his behalf, he was prejudiced not only as to the question of competency of Frank Galloway as a witness, but also on the issue, for the excluded evidence has a bearing upon both.

The two justices of the peace who presided at the examining trial of appellant and Frank Galloway were introduced by the commonwealth, and stated in substance that James Galloway swore as a witness on that trial that he did not see who fired the first shot or any of them, because the wagon was between him and those engaged in the difficulty. This was in conflict to his statement to the jury that Frank alone did the shooting. As a matter of right appellant was entitled to all the evidence given by James Galloway on the examining trial that was relevant or tended to reconcile the apparent contradiction. But what he averred he could prove by the two justices of the peace if permitted to state all the evidence given by James Galloway on that occasion, as appears from the paper presented to the court, threw no additional light upon the question as to what he had sworn about the shooting, being substantially but a mere repetition of what had already been detailed to the jury, of which appellant got the full benefit.

While there is no valid objection to the evidence we do not see how its exclusion prejudiced his rights. Counsel contends that what was said by Frank to James Galloway should have gone to the jury as part of the *res gestae. Res gestae* has been correctly defined as "those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act." They must be a "part of the immediate preparations for or emanation of such act," and "not produced by the

calculated policy of the actors" seeking to manufacture evidence for themselves.   1 Wharton on Evidence (2d ed.), § 259, and authorities cited.

Though generally declarations to be admissible as part of the *res gestae* must be contemporaneous with the fact, yet when they are connected with or grow out of it they may, even when made after a lapse of time, be admissible, as when an accident happens and the injured party declares to the physician called soon after the accident how it happened, or a person immediately escaping from an assault declares who committed it. *Harriman v. Stowe,* 57 Mo. 93; *Commonwealth v. McPike,* 3 Cush. (Mass.) 181, 50 Am. Dec. 727; and so the landlord of a hotel when a party had shot himself was allowed to testify that the occupants of an adjoining room came out seemingly excited, saying something about the man having shot himself. *Insurance Co. v. Mosley,* 8 Wall. (U. S.) 397, 19 L. ed. 437; *Newton v. Mutual Benefit Life Ins. Co.,* 2 Dill. (U. S.) 154, Fed. Cas. No. 10191.

On the trial of a prisoner for murder, a statement made by him a few minutes after the homicide, near the place and in the hearing and presence of eye witnesses of the homicide who were not called by the commonwealth, is admissible for the prisoner as part of the *res gestae. Little v. Commonwealth,* 25 Gratt. (Va.) 921. In *Jordan v. Commonwealth,* 25 Gratt. (Va.) 943, the description of the robber as given by the wife of the person robbed to the officer a "few moments" (how many does not appear) after the crime was committed was admitted as part of the *res gestae.* So the declaration of a defendant as to the circumstances under which he killed a runaway slave, made immediately after the fact, are admissible in an action for trespass for killing the slave. *Hart v. Powell,* 18 Ga. 635.

Applying the foregoing definition and the principles deducible from the cases cited to this case, we think that what was said on the occasion referred to by Frank to James Galloway was improperly excluded from the jury.  What was said was: "What shall I do?  I could not help it.  Must I not go and deliver myself up? I was sorry to have to do it.  If I had not killed him he would have killed me."

According to the statement of James Galloway when the killing occurred he was thirty-five or forty yards away, and immediately after it occurred appellant and Frank Galloway came away, meet-

ing witness about seventy-five yards from the place of the killing, when the declarations were made which the court excluded. The declarations, although not amounting to a circumstantial detail which would really make them objectionable, were an illustration of the act, and if credited by the jury would conduce to show the killing was done by Frank Galloway alone and done in self-defense.

They were not contemporaneous with the principal fact, it is true. But they are so connected with it that they reasonably may be the result and consequence of the coexistent motives, while neither the time that had elapsed nor the circumstances under which the declarations were made indicate them to have been the result of deliberateness. According to the evidence of a witness for the commonwealth appellant and Frank Galloway left immediately after the shooting, and when seen by that witness were twenty steps from deceased, running, and continued to run until they got to the place where James Galloway, Sr., met them and the declarations were made to him by Frank Galloway.

The only question, therefore, left for us to consider is whether the exclusion of the evidence by the court prejudiced the substantial rights of the appellant. Its importance and bearing upon the question of conspiracy, as well as guilt of appellant, has been already stated and is decisive of the question. For we do not consider the fact that the credit of James Galloway was impeached and the evidence he did give was disregarded by the court and jury as a sufficient reason for excluding the declarations alleged to have been made to him by Frank Galloway.

It is not always the case that the entire testimony of a witness is discredited because he may be contradicted or even impeached. The maxim *falsus in uno falsus in omnibus* is merely advisory, and may be applied or not by the jury in their discretion, and certainly should not control the court on a question of competency of evidence. Counsel for appellant contend that the verdict of the jury being for manslaughter it was the duty of the court after such finding to grant a new trial on account of the error in excluding the testimony of Frank Galloway thus made manifest.

Counsel are correct to the extent that the crime of manslaughter can not be committed in pursuance of a conspiracy which is a combination by concerted action of two or more persons to accomplish a purpose. But, as held by this court in the case of *Christian v. Commonwealth,* 13 Bush (Ky.) 264, it is for the court and not

the jury to determine from the evidence as to the competency of the witnesses in such cases, and besides, as the decision of the court must in each trial precede the verdict of the jury, the first can not be controlled by the latter.

Construing instruction No. 1 in connection with No. 5 given at the instance of appellant, the objection to the former that it takes from the appellant the right to judge at the time of the necessity for killing the deceased is removed, for in the latter the jury are told that "If the accused or his brother shot and killed the deceased, believing and having reasonable grounds to believe that the deceased would then and there kill them or either of them, or inflict great bodily harm, then he is excusable upon the ground of apparent necessity," etc.

In instruction No. 2, given at the instance of the accused, the jury are told that before they can convict him of murder for aiding and abetting they must believe he was present, wilfully and maliciously aiding and abetting. The jury, therefore, was not misled by the omission complained of in the third instruction for the commonwealth.

So instruction No. 4 for the commonwealth is fully explained by No. 5, given for appellant, and the right of appellant to kill in defense of his brother, which it is objected was omitted from the former, is recognized in the latter instruction.

It is objected that instruction No. 7, given to the commonwealth, and 5, to the defendant, are qualified by adding to each substantially the following: "unless they believe from the evidence that they began the difficulty." Except from the testimony given by witnesses for appellant there is no proof as to how the difficulty began. It was therefore improper to assume as a hypothesis that appellant or his brother began the difficulty in the absence of evidence to support it.

We perceive no other error in the record. But for the two mentioned the judgment of the court below must be *reversed* and cause remanded with directions for a new trial consistent with this opinion.

*Thompson & Roach, P. B. Thompson, Jr., John C. Thompson, for appellant.*

*Bell & Wilson, P. W. Hardin, for appellee.*

[Cited, *Farris v. Commonwealth,* 111 Ky. 236, 23 Ky. L. 580, 63 S. W. 615; *Howard v. Commonwealth,* 24 Ky. L. 91, 67 S. W. 1003.]