## John L. Pitts v. Commonwealth.

(Decided October 8, 1926.)

### Appeal from Breathitt Circuit Court.

1. Homicide.—Evidence in murder prosecution held sufficient to warrant overruling defendant's motion for peremptory instruction.
2. Homicide.—Defendant's admission that he had killed deceased made it incumbent on him to justify or excuse his act by evidence.
3. Homicide.—Evidence in murder prosecution held sufficient to support conviction.
4. Criminal Law.—In murder prosecution, admission of evidence of defendant's brother's statement, made in defendant's presence and not objected to by him, "John L. (defendant) shot Howard, and I cut his throat," held not error, where defendant had testified to same thing.

5. Homicide.—Admission ·of·· evidence, showing · condition of decedent's pistol and his unsuccessful efforts to procure ammunition, held·competent to show·falsity·of defendant's claim.that .decedent shot at.him.··, -.··   ,·:   !·    ,   ·  ·-..   · · . .· ·-..

6. Homicide.—Admitting evidence, on,cross-examination,- in murder prosecution, that. witness .had sworn off. drinking several. .months before, held. not. error,. , :  ·.  ,·· '   · · ,     · ·  ·. .·  .·.

7. Criminal. Law—,Question, on Cross-Examination of Defendant's Witness, Whether Defendant's. Deponent. was. .Fugitive from Justice, Held Not Prejudicial, where, Witness Said. He. Did· Not .. Know.—Question,.on cross-examination of defendant's witness in murder prosecution, whether party who had made affidavit that decedent intended to kill defendant was a fugitive from justice, held not· prejudicial, where witness 'answered that he 'did not know, and same threat was proven by other witnesses.

8. Criminal Law—Prosecuting ·Attorney May Give Opinion· of 'Facts to Jury if ·it is Reasonable Deduction ·from Evidence.—In murder prosecutions, prosecuting attorney·may, ·in argument· to jury, give· his opinion·of what occurred, if it·is a reasonable deduction from evidence.

9. Criminal Law.—Failure to rebuke prosecuting attorney for statement that men with .bad cases retained present opposing counsel held error.

10. Criminal Law—Court's Rebuke that Defendant's Attorney Should Not Interrupt Prosecuting Attorney's 'Argument Held Error.—In murder prosecution, court's remark, in response to · defendant's attorney's objection to prosecuting attorney's statement, that he should not· be interrupted -in ·his· argument, · held error; it· being duty of defendant's counsel to. protect 'client by making ·objection to improper remarks by prosecuting attorney.

11. Criminal Law—Judgment Could Not be Reversed for Error of Law, where Defendant was Not Prejudiced (Criminal Code of Practice, section 340).—In murder prosecution, where substantial rights of defendant were not prejudiced, considering whole case, by errors of law, held that judgment could not be reversed, in view of Criminal.Code of ·Practice;,section. 340. . : ··,!'·.

CLAY WATKINS and A. F. BYRD ·for appellant:

FRANK E. DAUGHERTY, Attorney, General,- and G.. D., LITSEY, Assistant Attorney General, for appellee.

OPINION ·OF :THE COURT .BY· DRURY,· COMMISSIONER— Affirming:. ·   .   ···    ·· ·.   : .· . · · · ·  . ..

On January 19, 1925, Jack Howard ·was· slain. John L. Pitts and Burns Pitts were charged by indictment with his murder,· and upon his separate trial, John L. Pitts was found guilty of manslaughter.·· His punishment was fixed at fifteen years'' confinement in the penitentiary.

He is asking for a reversal because the court refused at the conclusion of the evidence for the Commonwealth, and again at the close of all of the evidence, to sustain his motion for a peremptory instruction. At the close of its evidence, the Commonwealth had shown the death of Howard; that he had been shot three times, once in the side under his left arm, about two and one-half inches from his left nipple, once in the arm and once in the hand; that his throat was cut, his windpipe being cut in two and at least six other deep gashes were cut in his face and neck.

This killing probably occurred about eight o'clock in the evening. Five shots had been heard by the occupants of a house near the difficulty. Nearly an hour after the shooting, defendant and his brother came to this house, and defendant said he had killed Jack Howard, and his brother added, "Yes, John L. shot him, and I cut his throat." Defendant then said he had shot Howard five times and knew he had hit him once out of the five. Both Howard and Burns Pitts were shown to be drunk, but the defendant had not been drinking. The defendant had had a difficulty with Howard three or four years before, and Howard had shot him through the chest, inflicting upon him a serious wound, from which he recovered, and for which Howard was not prosecuted. A forty-five calibre automatic pistol was found near the body of Howard. It had the appearance of not having been recently fired, and the Commonwealth had evidence that tended to show Howard had no ammunition for this pistol. Parties who looked about there, found no shells of the kind that this pistol would use. With this proof before it, the court properly overruled defendant's motion for a peremptory instruction. His admission that he had killed Howard made it incumbent on him to justify or excuse his act by evidence. Simmons v. Com., 207 Ky. 570, 269 S. W. 732.

Defendant and his brother had been with Howard since noon of that day. The latter two were drinking. It was raining. After nightfall, the two brothers started to their sister's to spend the night. Howard started with them, saying he was going to get some one to come and spend the night with him. Defendant says Howard asked him and his brother to go with him to Emory Napier's. They did so. There defendant says Howard asked for Frankie Napier and was told, so he says, that Frankie Napier had gone to Wes Napier's. The evi-

dence for the Commonwealth is that they asked for Emory Napier. At this house defendant obtained a carbide lamp. They said they were going to his sister's. The three men started in that direction, went a short distance, then turned and started in the direction of Wes Napier's. Defendant says Howard asked them to go there with him. By this time, Howard and Burns Pitts had drunk what whiskey they had and Burns at the suggestion of Howard, so defendant says, went to Howard's home and got another quart of whiskey. When he returned, Howard and Burns Pitts refreshed themselves and then resumed their journey. After going about 300 yards they again stopped for refreshments. Defendant says they had information that Frankie Napier and Aaron Conley had gone hunting, and while they were stopped, Howard said he was going up there and get Frankie Napier or kill Aaron Conley. Defendant claims to have said, "If you are going up there for trouble, I am going back." Whereupon Howard cursed him and said, "You are going with me or you die." He says Howard drew his forty-five automatic and began shooting at him. Whereupon defendant fell and the light went out. He then began shooting, as he claims, in his self-defense, and shot five times at Howard. He says Howard had shot at him three times before he fired, and that Howard shot at him once after defendant's pistol was emptied. He says that his brother and Howard now engaged in a struggle; that the two fell and Howard did not arise. He is the only witness that testifies about what happened at the time of the difficulty. The evidence for the Commonwealth throws grave doubts upon the truth of the defendant's testimony His contention is that he was acting in self-defense and was shooting at Howard because Howard was advancing on defendant, and was shooting at him. If his statement be true, then it is difficult to understand how it happened that Howard was shot in the left side. Whether defendant acted in self-defense or not was a question for the jury; it was submitted to it under instructions not complained of as to form; the jury found against him, and the verdict was supported and sustained by the evidence.

His next complaint is addressed to the evidence. He says the court erred in permitting the Commonwealth to show that Burns Pitts had said at Wes Napier's, "John L. shot Howard, and I cut his throat." This was said in the presence of John L. Pitts. He did not deny it

then, and on his trial, he testifies to the same thing. We can not see how this could possibly be erroneous. Lige Manns, over his objection, was permitted to testify about the condition of Howard's pistol and about Howard's unsuccessful efforts to procure ammunition. This was competent for the purpose of tending to throw light upon the truth or falsity of the defendant's claim that Howard was shooting at him. He was asked on cross-examination and required, over his objection, to answer that two or three months before this difficulty, he had been in the habit of drinking, but that he had sworn off and had not drunk any for two or three months. We can not see how this could possibly be error, for it is rather to the man's credit, as it shows that he had amended his ways. The evidence shows that all three of these men had bad reputations.

Clayton Clemmons was not present at the trial, but an affidavit containing a statement of what his evidence would be was read to the jury. That statement was that about a year before the killing, Jack Howard told him he intended to kill John L. Pitts; that he had shot him once through the heart and could not kill him, and he intended to shoot him through the brains and see what effect that would have on him. Defendant claims that one of his witnesses, B. F. Summa, was required, over defendant's objection, to say that Clayton Clemmons was a fugitive from justice. The defendant is mistaken in that. Summa was asked those questions, but he never did say that he knew anything about Clemmons being a fugitive. His answer practically amounts to this, that he did not know. The defendant had established the making of practically this same threat by three other witnesses, hence we can not see how he was prejudiced by the question asked of Summa.

His next complaint is this: "In his closing argument to the jury, G. C. Allen, Commonwealth's attorney, argued to the jury that Burns Pitts, the brother and codefendant of John L. Pitts, in his opinion went back to the home of Jack Howard after the killing of Howard, and got Howard's pistol, the one found by Howard's body after he was killed, and took it to the body and placed it by his side to make it appear that he had the pistol at the time of the killing and was shooting at the defendants at the time Howard was killed, and that he did not go back and get the liquor as the defendant, John L. Pitts, said he did, when there was no evidence in the case

to authorize such an argument." We have often held that the attorney for the Commonwealth had the right to make all reasonable deductions possible from the evidence. Of course, there was no evidence that John L. Pitts went back and got this pistol and put it by the side of Howard after he was killed, but there was evidence that this killing took place not far from Howard's home. There was evidence that tended to show Howard had no ammunition for his pistol, and there was evidence that the pistol had not recently been fired, and it will be observed that the Commonwealth's attorney does not state these things as facts, but states that, in his opinion, these things occurred. This was his deduction; it was a reasonable deduction from the evidence and was not erroneous.

His next complaint is this: "A. F. Byrd was one of the attorneys for the defendant, and argued the case for the defendant and was followed by the said G. C. Allen, Commonwealth's attorney, and the said Allen, in his argument to the jury, said that when a fellow had a bad case he always got Byrd to defend him, and said that Byrd charged him so much to defend him that it was a punishment. To this statement of the Commonwealth's attorney, the defendant objected, and the court overruled the objection and the defendant at the time excepted and still excepts. The court, in overruling the objection of the defendant's attorney to the argument of the said Allen, remarked to the attorney for the defendant in the presence of the jury that counsel for the defendant should not interrupt the attorney in his argument. To this statement of the court the defendant at the time excepted and still excepts." The defendant cites the case of Howard v. Com., 24 Ky. L. R. 91, 67 S. W. 1003, and insists that upon that authority, this judgment should be reversed. Now an examination of the case of Howard v. Com. will show that that case was reversed because of error in the instructions. Of course, the court criticized the action of the Commonwealth's attorney in saying what he did, and the action of the Commonwealth attorney in this case is not to be commended; neither can we approve the action of the court in saying to the attorney for the defendant that he should not interrupt the Commonwealth's attorney in his argument. A defendant has the right to be represented by counsel and it is not only the right but it is

the duty of the defendant's counsel to diligently protect his client by making objections to improper remarks of the Commonwealth's attorney, and the court erred in not rebuking the Commonwealth's attorney for making these remarks, and erred again in making the remark that he did about these interruptions.

By section 340 of the Criminal Code, we are only permitted to reverse a judgment for an error of law when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced, and when we measure these errors by that provision of the Code, we do not feel that these errors are sufficient to authorize a reversal of the judgment. It is therefore affirmed.