## Gilbert v. Commonwealth.

(Decided February 15, 1929.)

WM. LEWIS & SON, ROY W. HOUSE and W. W. RAWLINGS for appellant.

J. W. CAMMACK, Attorney General, S. H. BROWN, Assistant Attorney General, and FRANK H. BAKER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming as to John Gilbert, and dismissing as to Robert Gilbert.

About 5 p. m. on Wednesday, July 6, 1927, Robert Gilbert shot and killed Grover Baker on Bar creek in Clay county. Robert Gilbert and John Gilbert were charged by indictment with murder, and, in the second count of the indictment, Robert Gilbert was charged with murder, and John Gilbert was charged with counseling, advising, encouraging, aiding, and abetting in the commission of the crime. Both were found guilty, and their punishment fixed at confinement in the penitentiary for life. They appealed. The record was filed in this court on March 26, 1928, and thereafter, on May 6, 1928, the defendant Robert Gilbert escaped from custody, and,

that fact being properly manifested, the appeal as to Robert Gilbert was, after notice to his attorney, dismissed upon motion of the Attorney General. We have before us now only the appeal of John Gilbert, the father of Robert.

The man slain was 22 years of age. He was a single man, and had been paying some attentions to Miss Jane Gilbert, the 19 year old daughter of John Gilbert. John Gilbert objected to these attentions, and these two young people, perhaps as a result of that, had not met for about a month before the killing. Jane Gilbert had told Baker of her father's objection to his attentions. On one occasion, Jane had ridden a part of the way home from a meeting behind Baker upon his mule. She dismounted before reaching home, but her father learned of that, and gave her a whipping for it. Baker knew of that. On the day of the killing, Baker, Robert Wilson, and Frank Sizemore were plowing and hoeing corn on the hillside near where the shooting took place. John Gilbert, Robert Gilbert, and other members of the Gilbert family were engaged in a like pursuit upon an adjoining hillside. Between these two hillsides there was a stream known as Bar creek, and running along this creek there is a public road. According to the witnesses for the commonwealth, in the afternoon of this day, John and Robert Gilbert worked for a while, and then went to their house and remained there for about an hour, then returned to their work and worked a while longer. Robert Gilbert sang a vulgar song, and fired his pistol twice saying he felt like a G— d— sheriff. Susie Gilbert, the wife of John, and mother of Robert, came out and spoke to her husband about Robert's conduct, and told him to bring the boy into the house and put him to bed, but that was not done. They worked for a brief time, and then went into the house. About 4:30 or later, Robert came out of the house with a pair of saddlebags on his arm, walked down to the road, and, when he passed where Baker and his companions were at work, he shook his saddlebags at Baker and motioned to him. Baker laid down his hoe and walked down to the road where Robert was, whereupon Robert said to him: "I am going to the store. Won't you go with me?" Baker stopped and turned as if to look at his companions, and dropped his head; then Robert Gilbert drew his pistol and fired four shots, three of which struck Baker, one in the left ear, one back of the left ear, and one just above the last shot. These shots ranged toward

the forehead of Baker, but none of them passed through his head. Baker fell, and died in a short time. Robert went back up the road and halloaed, ''I have killed the G— d— s— of a b—.'' Whereupon John Gilbert said, ''That is the very G— d— thing I sent you there to do.'' They then went into the house, stayed there a short time, came out with their guns, and went into the woods. The commonwealth's witnesses, who testified to these things, say they were about 60 or 70 yards away from the spot where this killing occurred; that Baker was unarmed, and had made no effort to do Robert Gilbert any harm. It is admitted that, at the time this shooting took place, John Gilbert was standing about 30 or 40 yards away, with a rifle or shotgun; the witnesses merely speak of it as a gun, but John says he went into the house, got his gun off the rack, and came out. That would indicate it was either a shotgun or rifle, but there is no contention that he did any shooting. Other witnesses for the commonwealth testified to having heard two shots fired about 4 o'clock and to having heard four fast shots fired at the time of the killing.

The account of this killing, as given by the defendants and their witnesses, is practically this: That, during this afternoon, Baker was drunk, and had been mocking John Gilbert. When John Gilbert would say ''Whoa'' to his mule, Baker would repeat it. That Baker had a pistol and would wave and flourish it around when the Gilberts had their backs turned. That Mrs. Gilbert came out and told them that, and that, on account of that, they went into the house and stayed a while. A little after 4 o'clock Robert Gilbert started down Bar creek to a store to get some sugar and coffee for his mother. That he saw Baker and his companions at work on the hillside, but he did not wave at Baker, but had started down the creek. That his father called to Wilson, one of Baker's companions, and said, ''What is the matter with Baker?'' and he heard his father call a second time to Wilson, ''Stop Baker, don't let him go down there and hurt Bob.'' About this time, he heard Baker say, ''I'll kill him if I have to run him down.'' Robert Gilbert said he drew his pistol then. He could not see Baker for some sycamore bushes between them, but he heard the members of his family screaming and he looked back, and saw Baker coming running behind him. When Baker came up, he spoke and said to him, ''Grover, let's go to the store.''

Baker did not answer, but looked "funny," and kept walking upon him, and, when he got within two or three steps of him, Baker said, "I want to know what is the matter with you sons of bitches." Robert says he replied, "There is nothing the matter with me." Baker said, "You fellows have been trying to report my still and I'll kill you G— d— you," and fired, and that he (Robert Gilbert) then fired three times at Baker. That Baker fell, and his pistol flew out of his hand, and he picked it up and stuck it in his overall bib. All the witnesses for the defendants say that Robert Gilbert did not holloa to his father and tell him that he had killed the G— d— s— of a b—, and that his father did not answer back, "That is the very G— d— thing I sent you there to do." No pistol was found on or near Baker, but, if he had one, the absence of it is explained by Robert's statement that he picked it up. John Gilbert, his wife, Susie, Robert, and his three sisters, Laura, Della, and Jane Gilbert, all say that the killing occurred in this way, whereas Robert Wilson and Frank Sizemore, who were working with Baker, say that it occurred as we have first stated. Just how it occurred was a question for the jury to determine, and the jury has found that it happened as the commonwealth contended. That verdict will have to stand, unless the court committed some error as a result of which the jury may have reached an erroneous conclusion.

In his first and second grounds for a new trial, he complains of alleged errors of the court in admitting and excluding evidence, but evidently he did not appraise these grounds very highly, for he has not discussed them in his brief, and, from our examination of the record, we are unable to find where he could have said very much in support of them.

The court overruled some objections that he interposed, but that was properly done, for the objections were without merit, and, in the ruling upon the evidence, Gilbert seemed to have fared better than he was entitled to fare, for he succeeded in having evidence excluded that should have been admitted. Particularly is that true of the evidence of Miss Jane Gilbert, who was asked if, when she saw the corpse of Baker after it had been dressed, she did not say to those present: "Do you see me? I am long gone. I will not stay where they call people out of the field and kill them. It was a made up piece of business between Bob, Susie and John." She had testified that she was within eight or ten steps of these par-

ties at the time the shooting took place; that Baker began it and shot at Robert Gilbert twice; that Robert then shot three times, Baker fell, and that Robert picked up Baker's pistol. The commonwealth sought to show what she said when she saw the corpse of Baker for the purpose of affecting the credibility of her evidence, but the court improperly sustained Gilbert's objection, and the evidence was excluded. He objected to the statement that Bob Gilbert had said after the killing that he had killed the G— d— s— of a b—. Ordinarily, declarations made by conspirators after the accomplishment of the purpose of the conspiracy, are inadmissible against other conspirators, but that rule does not apply to declarations which are so closely connected with the accomplishment of the object as to form a part of res gestae. See 5 R. C. L. 1089; Morris v. Com., 11 S. W. 295, 10 Ky. Law Rep. 1001; Com. v. Delaney, 29 S. W. 616, 16 Ky. Law Rep. 509; Galloway v. Com., 11 Ky. Op. 951.

"Where several persons participate in the actual commission of a crime, the acts and declarations of any one of them, while so participating, are admissible against all the others. It is sometimes intimated that such evidence is received under the rule with respect to the acts and declarations of coconspirators and codefendants, but as such evidence is frequently received when the circumstances are such that the limitations of the rule mentioned would preclude its reception, it is apparent that the real reason for the admission of the evidence is that such acts or declarations constitute a part of the res gestae." 16 C. J. 668, sec. 1334. See, also, Shotwell v. Com. 65 S. W. 820, 23 Ky. Law Rep. 1649; Riggs v. Com., 33 S. W. 413, 17 Ky. Law Rep. 1015; Morris v. Com., supra.

In his fourth ground, he complains of the action of the court in admonishing the jury with respect to certain evidence introduced. That evidence was the evidence of Wilkes Sizemore, Laura and Della Gilbert. These witnesses were not present. The defendant had sought a continuance because of their absence, had filed an affidavit showing the efforts he had made to secure their attendance, and what their evidence would be. These statements the court permitted the defendants to read to the jury as the evidence of these witnesses. The court admonished the jury that it should take and receive such as the testimony of the absent witnesses and give it such weight as they would if the witnesses were in court testi-

fying before the jury. To this admonition, the defendants objected and excepted, and moved the court to instruct the jury to take the statements as read from the affidavits as true, which motion the court overruled, and the defendants excepted. This case was first set for trial on September 29. At that time the defendants obtained a continuance because of the absence of six witnesses, including Della and Laura Gilbert. The case was then set for October 12. When it was called, he filed an affidavit for a continuance because of the absence of ten witnesses, including these two daughters. The court overruled his motion for a continuance, and required him to go to trial. He was permitted to read from the affidavit his statements as to what would be the evidence of Della Gilbert, his daughter, Laura Gilbert, another daughter, and Wilkes Sizemore. He did not read the statements as to what the evidence of the other witnesses would be, thereby waiving the matter as to them. His chief complaint is that his two daughters Della and Laura were eyewitnesses to this killing, that they were very material witnesses, and that the proper force and effect of their evidence could not be obtained without their personal attendance. He claimed that they were sick, and had made the same complaint when the case was first continued. The court told him on the day the case was first continued that he was continuing it in order to give him an opportunity to take the depositions of any absent witnesses he might desire, and that he would give him compulsory process to obtain their attendance. Although he claimed his daughters were sick, he did not take their depositions and did not support his affidavit for a continuance by the statement of any physician who had attended or was attending them in their illness.

There was an examining trial of this case, and these daughters probably testified at that examining trial; at least, the statements of what their evidence would be was either most carefully and studiously prepared, or else, in the preparation of it, the writer had before him the evidence of these daughters at the examining trial, for the statements of what their evidence would be is so elaborate that it suggests such. The defendant insists that, as this was the same term at which the indictment was returned, therefore, section 189 of the Criminal Code applied, and not subsection 1 of section 189. This argument is based upon subsection 2 of section 189, but the defendant overlooks the fact that subsection 2 was re-

pealed by the Act of March 22, 1920. See chapter 57, p. 244, Acts of that year, so that disposes of the question of a continuance, as well as of his contention that the court should have instructed the jury that they must take the statements of these witnesses so read to them as true.

His third ground for a new trial is that the court erred in overruling the motion of John Gilbert, made at the conclusion of the evidence for the commonwealth, to instruct the jury to find him not guilty. In the case of Simmons v. Com., 207 Ky. 570, 269 S. W. 732, we held: "Where there is any evidence, however slight, tending to show guilt of the accused, the case should go to the jury." To the same effect is Pitts v. Com., 215 Ky. 837, 287 S. W. 32; Oney v. Com., 225 Ky. 590, 9 S. W. (2d) 723; Fleming v. Com., 219 Ky. 697, 294 S. W. 153. Certainly there was some evidence here tending to show the guilt of John Gilbert, for it is admitted that he was conveniently near to the place of the killing and had a gun in his hand; to that we have the added evidence of the commonwealth that, immediately after the killing, Robert Gilbert announced what he had done, and John Gilbert said that was what he had sent him there to do. Clearly, the defendant's guilt or innocence under those circumstances was a question for the jury.

His seventh ground is that the court erred in instructing the jury. The court gave to the jury six instructions. By No. 1, the court submitted the question of Robert Gilbert's guilt, correctly defining those circumstances under which they should find him guilty of murder and those under which they should find him guilty of manslaughter.

The court gave instruction No. 2, which is: "If you shall believe from the evidence beyond a reasonable doubt that the defendants, Robert Gilbert and John Gilbert in this county and before the finding of the indictment herein wilfully and feloniously conspired together and agreed to and with each other to wilfully and feloniously shoot and kill the said Grover Baker, and that in furtherance of said conspiracy and agreement, if any such there was, and while the same existed, the defendant, Robert Gilbert, shot and killed the said Grover Baker, in this county, wilfully and feloniously, and shall further believe from the evidence beyond a reasonable doubt that the defendant, John Gilbert was at the time near enough so to do and did aid, assist, abet, advise, encourage, counsel, and command the said Robert Gilbert to so shoot and

kill the said Grover Baker, if he did so do, then you should find the defendant, John Gilbert, guilty of wilful murder as charged in the indictment herein, and fix his punishment therefor as is set out in the following instruction No. 3.''

In instruction No. 3, the court said to the jury: "If you find the defendants or either of them guilty of wilful murder, as charged in the indictment herein, you will fix the punishment at death, or at confinement in the penitentiary for life, of such one as is so found guilty, in your discretion, according to the proof.''

In the fourth instruction the court said to the jury: "If you shall have reasonable doubt from the evidence of the defendants' or either of them having been proven guilty; then you should find them or such one of them as to whom you may have such a doubt not guilty.''

Instruction 5 was a self-defense instruction, but the court qualified it and made it inapplicable to the case if the jury should believe from the evidence, beyond a reasonable doubt, that Robert and John Gilbert were parties to a conspiracy and agreement with themselves to shoot and kill Baker, and that, in furtherance thereof, if such there was, the defendant Robert Gilbert went to the place where Baker was known to be, and sought the difficulty etc., and thereby made the danger to the defendants or to either of them. There was no conspiracy charged in this indictment, and it is insisted, therefore, instruction No. 2 was erroneous, but in 16 C. J., 1042, we find this: "It has been held that where two or more persons are jointly indicted it is not inappropriate to charge on the law of conspiracy where the evidence authorizes such a charge, although the indictment does not allege a conspiracy.'' To same effect is section 135, p. 257, vol. 1, Randall's Instructions to Juries.

This indictment charges these defendants with murder, then charges that Robert Gilbert did the murder, and that John Gilbert aided and abetted him therein. If the jury believed the evidence for the commonwealth, then it must have believed that these defendants, after they quit work and went to the house, then or theretofore agreed that Baker should be killed, and they then came out of the house, Robert Gilbert armed with a pistol, and John Gilbert with either a rifle or a shotgun, and that Robert Gilbert shot and killed Baker, and that John was about thirty steps away, prepared to give aid if necessary, and we have evidence that immediately after the

killing, when Robert told him what he had done, John said, "That is what I sent you there to do." The charge against these men was murder. The conspiracy was merely the method by which they carried it out and did it. Formerly a defendant could not testify, and the rigor of this rule was relaxed very slowly. By section 234, Criminal Code, of 1877, it was provided: "If two or more persons be jointly indicted, for the same offense, each shall be a competent witness for the others, unless the indictment charge a conspiracy between them."

Immediately after the adoption of this provision, a practice arose on the part of commonwealth's attorneys, whenever two or more were charged with crime, to allege in the indictment that the crime was committed pursuant to a conspiracy. The effect of this action on the part of the commonwealth's attorneys was to prevent such defendants from testifying. At first defendants sought to attack such indictments by claiming that the inclusion of a conspiracy charge made the indictments duplicitous, and that the indictment really contained a charge of two offenses, but, in the case of Salisbury v. Com., 79 Ky. 425, 3 Ky. Law Rep. 211, this court held that such indictments did not charge two offenses. The reason underlying that decision is that the conspiracy which was a misdemeanor was merged in the felony when that was consummated, and this doctrine of merger is discussed and explained in the case of Myers v. Com., 210 Ky. 373, 275 S. W. 883, and in Ray v. Com., infra. Under that section of the Code which, although it has been repealed, is still carried numerous decisions of this court will be found. We have uniformly held that, after the conspiracy has been established by evidence, the acts and declarations of one alleged conspirator is admissible against an alleged co-conspirator. See Day v. Com., 173 Ky. 269, 191 S. W. 105; Bowling v. Com. (Ky.) 126 S. W. 360; Hall v. Com., 101 S. W. 376, 31 Ky. Law Rep. 64; Hall v. Com., 93 S. W. 904, 29 Ky. Law Rep. 485; Stovall v. Com., 62 S. W. 536, 23 Ky. Law Rep. 103; Pedigo v. Com., 103 Ky. 41, 44 S. W. 143, 19 Ky. Law Rep. 1723, 42 L. R. A. 432, 82 Am. St. Rep. 566; Poff v. Com., 25 S. W. 883, 15 Ky. Law Rep. 820; McGraw v. Com., 20 S. W. 279, 14 Ky. Law Rep. 344; Cornelius v. Com., 15 B. Mon. (54 Ky.) 539; Jones v. Com., 2 Duv. (63 Ky.) 554.

This question of conspiracy, including the admissibility of evidence and the propriety of instructing upon conspiracy as affecting the evidence without a charge

thereof being contained in the indictment is discussed in the recent cases of Crenshaw v. Com., 227 Ky. 223, 12 S. W. (2d) 336, and Ray v. Com. (Ky.) 14 S. W. (2d) —, decided February 8, 1929. In the latter case, the opinion cites the cases of Dorsey v. Com., 17 S. W. 183, 13 Ky. Law Rep. 359, and Yontz v. Com., 66 S. W. 383, 23 Ky. Law Rep. 1868, and discusses them and numerous others, so that it is not necessary for us here to again discuss those.

By the Act of May 1, 1886, a further relaxation in the law relative to competency of a defendant as a witness was made, and that act may now be found in Kentucky Statutes, secs. 1645, 1646, 1647, 1648. It will be noted that section 1647 is practically the same as section 234, Criminal Code of 1877; but by an Act of March 23, 1894, sections 3 and 4 of the Act of May 1, 1886, now sections 1647, 1648, Kentucky Statutes, as well as section 234, Criminal Code, were repealed, and thus the last barriers against a defendant testifying were swept away, so that now defendants may testify even though they are charged with conspiracy, and, as a result of that amendment, commonwealth's attorneys do not now charge conspiracy in the indictment as frequently as they formerly did, but usually charge defendants whom they think are jointly guilty with aiding and abetting each other, and, if a defendant so charged is shown to have conspired with others jointly charged with him in the indictment, then the acts and declarations of such others, made before the accomplishment of the conspiracy, become competent evidence against him, and, if two or more parties charged with murder accomplish their purpose through some plan that has been previously agreed upon, then both are equally guilty. The question of guilt of aider and abetter is thoroughly discussed in the case of Watkins v. Com., 227 Ky. 100, 12 S. W. (2d) 329.

John Gilbert insists that he was entitled to an instruction under which the jury might have found him guilty of manslaughter. The court gave such an instruction as to Robert Gilbert, but gave no such instruction as to John, which was properly done, because John was either guilty of murder or guilty of nothing. If he went out there with Robert, pursuant to an agreement with him that Robert should kill Baker and John Gilbert should be near enough to aid if necessary, then he is guilty of murder; but, if his statement is true, and his only purpose in going out there was because he was

alarmed by the conduct of Baker, and entertained fears for the safety of his son, and that no agreement existed between them to kill Baker, he is innocent, for he took no part in the killing further than to station himself conveniently near, armed and equipped to take part if necessary. If his purpose in coming there was innocent, as he says, he should have been acquitted, but, if his purpose in coming there was malicious, he was properly convicted. There was no evidence on which to base a manslaughter instruction so far as John Gilbert was concerned; hence the court did not err in failing to give a manslaughter instruction for him. Nor should the court have told the jury if they entertained a doubt as to whether John Gilbert was guilty of murder or manslaughter that they should give him the benefit of the doubt, and find him guilty of manslaughter, for, under no phase of this case, could John Gilbert be found guilty of manslaughter. The crime of manslaughter cannot be committed in pursuance of a conspiracy to kill a man. See Galloway v. Com., 11 Ky. Op. 951; 29 C. J. 1066, sec. 38.

He has attacked the qualification attached to the self-defense instruction as erroneous, and insists that it should not have been given, because, as he says, no witness intimates that Robert Gilbert went to where Baker was at work, provoked and brought on the difficulty. It is not necessary that the jury should believe or that the evidence should show that Robert Gilbert went to where Baker was, and told him to move over, so that he might step into Baker's tracks, and then bring on the difficulty. It is sufficient if Robert went to the neighborhood of where Baker was, and he did go down the road past where Baker was at work, and, according to the evidence for the commonwealth, beckoned to Baker, and Baker came down there. That was equivalent to going where Baker was, for he called Baker to him, and, when they met, he was where Baker was. It was only about twenty or twenty-five steps from the place where Robert stopped to where Baker was at work when he called him. Some of the witnesses put this as much as sixty or seventy steps, but it does not make any difference; Robert Gilbert called Baker to him, which made the situation the same as if Robert had gone to Baker. He brought about the meeting, and provoked the difficulty which resulted in the killing. There was no error in the instructions given.

The sixth instruction was devoted to definitions, and of it there is no complaint.

His eighth ground for new trial is that this verdict is so flagrantly and palpably against the overwhelming weight of the evidence as to show it to be the result of passion and prejudice, or both. We have often said that we would not reverse a judgment entered on a verdict of this kind, unless the verdict was so flagrantly and palpably against the evidence as to shock the conscience of the court. See Couch v. Com., 227 Ky. 190, 12 S. W. (2d) 285. We are not shocked by this verdict.

We must not lose sight of the fact that the slain man was shot in the back of his head. No one disputes that. The range of the bullets was toward his forehead. No one disputes that. The evidence fully sustains the verdict.

The judgment is affirmed.