## Alexander v. Commonwealth.

(Decided Nov. 26, 1937.)

CAM HOWARD for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

At the September, 1936, term of the Muhlenberg circuit court, the grand jury returned an indictment against appellant and Annie Howard charging them jointly with the willful murder of Oakley Goodall. The indictment charged, alternatively, that appellant murdered Goodall and Annie Howard advised, assisted, and encouraged appellant in the commission of the crime; or that Annie Howard murdered Goodall and appellant aided, assisted, and encouraged her in so doing; and, thirdly, that one or the other of the defendants did the actual killing of Goodall and the other defendant aided, counseled, and advised him or her in so doing, but which of said defendants actually murdered Goodall or which of them aided, counseled, and encouraged the other in so doing, was unknown to the grand jury, etc.

At the April, 1937, term of the court, appellant was tried and found guilty of voluntary manslaughter, and his punishment fixed at confinement in the penitentiary for a term of 21 years. Later, in May, 1937, the indictment was dismissed as against Annie Howard for lack of evidence.

Appellant has appealed from the judgment against him, insisting on a reversal of same upon the sole ground that the court erred in giving to the jury a voluntary manslaughter instruction.

Since appellant does not question the sufficiency of the evidence to sustain the verdict, it is not necessary to consider the evidence except for the purpose of determining the necessity or propriety of the court's giving the manslaughter instruction.

The evidence is circumstantial, there being no direct evidence connecting appellant or any other person with the homicide. The evidence, surrounding facts, and circumstances, in substance, are as follows: Green river is the dividing line between Muhlenberg and Ohio counties. The deceased, Goodall, lived in Ohio county near Green river not far from a dam constructed across the river, and appellant lived on the opposite side of the river in Muhlenberg county about 200 yards below the dam. On Saturday evening, January 18, 1936, after Goodall had done his day's work, he changed his clothes, saddled his horse, and rode away; on the following morning, January 19th, his horse had returned home

with the saddle on. An unsuccessful search for Goodall was made, but his body was not found until May 10th following, when his body was found in Green river on the Muhlenberg county side, about one quarter of a mile below the dam. It was shown by the evidence for the Commonwealth that, on the day before his disappearance, Goodall had in his possession a $10 bill, two $5 bills, some $1 bills and two or three checks. One of the checks was an Armour Creamery Company check for the sum of $3.60. Vol Givens testified that on the night Goodall was last seen he saw him at the home of appellant at about 9:30 o'clock, and that Goodall was drinking but not very drunk; appellant suggested to the witness, Givens, that he, Givens, should go home, but that he was going to keep Goodall all night. A. T. Gardner testified that he operated a grocery and meat store at Rochester (a small town in the community) and on Sunday morning of January 19th appellant came to his store and purchased some meat and tendered in payment a check on Armour Creamery Company for $3.60 and the check bore four indorsements, the third one being that of appellant. Appellant told him "it ought to be a good check; I sold a gallon of whiskey for it." J. P. Shrum testified that he was a member of the coroner's jury that investigated the death of Goodall and questioned appellant, and appellant said that Goodall came to his house around 8 or 9 o'clock and wanted some whisky, and he sold him a pint of whisky and Goodall gave him a check for $3.60, and he took out for the whisky and gave him the balance in change.

The witness Vol Givens also testified that soon after the disappearance of Goodall, in making an investigation, he saw tracks leading from the direction of appellant's house to the river at the point of the boat landing; that there were two sets of tracks leading to the rock at the boat landing and one set leaving; that the tracks had been made in soft mud which had frozen and that it looked like an overcoat or clothes of some kind had been dragged over the rock to the water's edge. L. A. Mohon testified concerning the tracks and said that there were two sets of tracks leading to the boat landing and one set leading away toward the house of appellant. At the time Goodall's body was found, the flesh had left the skull and there were various wounds and fractures of the skull, any one of several of which would have produced his death, and there were discolorations found

around the fractures of the skull which, according to the evidence of the doctors, indicated that the fractures had been made while circulation still existed and not after death had occurred. Goodall's pocket book was found in his pocket and contained only two checks, one a Sears, Roebuck Company check for a few cents and another with the maker's name torn off. No money was found in the pocketbook or about him. Appellant did not testify or offer any evidence in his behalf. The case was submitted to the jury upon evidence for the Commonwealth.

It is insisted for appellant that the evidence discloses that robbery was the motive of the murder of Goodall, if he was murdered, and appellant was guilty of murder or no crime at all, and for that reason it was error to instruct the jury on any phase of homicide except murder, and that the voluntary manslaughter instruction given by the court afforded the jury an opportunity to bargain and compromise on a manslaughter verdict, whereas, if the court had instructed the jury on murder only, it is highly improbable, under the evidence and circumstances of the case, that the jury would have agreed on a verdict of murder.

To support appellant's position counsel cites and relies on the case of Gilbert v. Commonwealth, 228 Ky. 19, 14 S. W. (2d) 194, and other like or similar cases. In that case there were eyewitnesses to the homicide. John Gilbert and his son, Robert, were jointly indicted for murder, the allegations of the indictment being somewhat similar to those in the present case. However, the evidence definitely showed that Robert Gilbert actually committed the homicide, and, if John Gilbert was guilty of any offense at all, it was for aiding and abetting. It was held that a voluntary manslaughter instruction as to John Gilbert was not necessary. In Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14, a voluntary manslaughter instruction was held unnecessary because, like the Gilbert Case, supra, there was a witness to the homicide. A witness testified that she saw Mrs. Payne strike her husband in the head with a club while he was lying on the porch. Mrs. Payne testified in her own behalf and denied that she struck her husband or had any connection with or knew anything about how he came to his death.

In the case at bar no eyewitness testified to the homicide—not even appellant for himself. From the

nature of the wounds inflicted on the head of the deceased, tracks leading from appellant's house to the river, and the evidence indicating that the body of appellant had been dragged across a rock near the water's edge, furnish some evidence of a struggle. It is possible, and the jury had the right to so believe, that a controversy or struggle had ensued between appellant and Goodall before the latter was killed, and the killing was done in sudden affray or in sudden heat and passion, and appellant then put the body of his victim in the river to conceal the crime.

In Fletcher v. Commonwealth, 239 Ky. 506, 39 S. W. (2d) 972, it is held that where the evidence is purely circumstantial and indicates struggle, the court should instruct on every phase or degree of the offense, including self-defense and manslaughter. Also, in the case of Sergent v. Commonwealth, 202 Ky. 228, 259 S. W. 349, 351, in discussing the propriety of giving a manslaughter instruction in a homicide case where there were no eyewitnesses and the evidence all circumstantial, the court said:

"While there were no visible signs of a struggle having taken place at the spot where the body of Sergent was found with a large hole in the back of his head, the evidence shows that there were footprints in and around and leading down the hillside from it, and further that a fire had been kindled close to the body, the burnt embers being plainly discernible; and considering the fact that appellant was charged with the offense of murder, and there being no eyewitnesses, we feel that the instructions for manslaughter and self-defense should have been given."

See, also, Bast v. Commonwealth, 124 Ky. 747, 99 S. W. 978, 30 Ky. Law Rep. 967; Frasure v. Commonwealth, 169 Ky. 620, 628, 185 S. W. 146; House v. Commonwealth, 251 Ky. 834, 65 S. W. (2d) 997.

It is our view that this case is governed by the Frasure and Sergent Cases, supra, and other like cases, and that the court did not err in giving the voluntary manslaughter instruction.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.